509 A.2d 1271

In re ESTATE OF Anna W.M. OGDEN, Deceased.

Appeal of William T. DOM, III, Esq.; Lela Dom McKenney; Jane C. Sweeney; Daniel L. Caster; Edward Charles Dom; Richard McCullough Dom; William T. McKenney; Robert W. McKenney, Jr.; William T. Dom, IV; Denna Ogden Dom; George Byers Dom, Beneficiaries Under the Will and the Trust of Anna W.M. Ogden, Deceased.

In re ESTATE OF Anna W.M. OGDEN, Deceased, Trust
For Robert Mills Dom.

Appeal of William T. DOM, III, Esq.; Lela Dom McKenney; Jane C. Sweeney; Daniel L. Caster; Edward Charles Dom; Richard McCullough Dom; William T. McKenney; Robert W. McKenney, Jr.; William T. Dom, IV; Denna Ogden Dom; George Byers Dom, Beneficiaries Under the Will and the Trust of Anna W.M. Ogden, Deceased.

Superior Court of Pennsylvania.
Argued Feb. 18, 1986.

Filed April 18, 1986.

Reargument Denied June 25, 1986.

274

Stanley Yorsz, Pittsburgh, for appellants.

Before BROSKY, OLSZEWSKI and POPOVICH, JJ.

OLSZEWSKI, Judge:

This action was initiated by petitions for distribution filed by the trustee of the inter vivos and testamentary trusts of Anna Ogden, decedent. The court below determined that persons in the class of beneficiaries could not be excluded

from distribution because they had been adopted into the class and not born into it. We agree.

Anna Ogden died on July 23, 1950. On December 31, 1941, she had entered into an irrevocable trust agreement, which has been properly recorded. Decedent also left a will dated November 4, 1944, which was duly probated and is of record. The trust and the will provide for distribution of income among eight named grandnieces and grandnephews. The deaths without issue (natural or adopted) of two of the named beneficiaries reduced the distribution from eighths to sixths. Catherine Dom McCarrell, one of the named beneficiaries who was receiving income from the trust, died on October 25, 1982. She is survived by her children—Malcolm W. McCarrell, born November 25, 1950, and adopted April 4, 1952; and Rachel McCarrell McCune, born March 15, 1952, and adopted February 16, 1953.[1] By petitions for distribution, the trustee requested the court to determine who is entitled to the distribution of income previously paid to Catherine Dom McCarrell.

The question before us is whether the children of Catherine Dom McCarrell are entitled to her one-sixth share of income from the trusts, as the children of the other named beneficiaries are entitled to their parents' share of income

---

1. The orders and decrees in the adoptions of Malcolm W. McCarrell and Rachel McCarrell Cune were made by President Judge Anderson in the Orphan's Court of Washington County, Pennsylvania. They read in part:

ORDER AND DECREE

that Clifford Charles Titus is from this date the adopted child of Ebenezer M. McCarrell and Catherine D. McCarrell and shall hereafter have all the rights of a child and heir of such adopting parents and be subject to the duties of such child and shall assume the name of such adopting parents and be hereafter known as Malcolm Wilson McCarrell.

Reproduced record at 44a.

ORDER AND DECREE

that Baby Murphy is from this date the adopted child of Ebenezer M. McCarrell and Catherine D. McCarrell and shall hereafter have all the rights of a child and heir of such adopting parents and be subject to the duties of such child and shall assume the name of such adopting parents and be hereafter known as Rachel Dom McCarrell.

Reproduced record at 45a.

upon their parents' demise, or are prohibited from receiving their mother's share because they were adopted by her and not born to her. The lower court answered this question in favor of the adopted children of Catherine Dom McCarrell. Appellants make two allegations of error. Initially, appellants urge us to find that the trial court erred in holding that adopted children are members of a class of beneficiaries described in the will and trust of Anna Ogden as "children" and "heirs of the body." Appellants also argue that the intent of Anna Ogden to exclude adopted children is apparent from the words of the will and trust, and that it was error for the court to resort to statutory rules of interpretation to conclude otherwise. These arguments are without merit.

The issues appellants raise attempt to assign meaning to an entire will and trust document on the basis of words and phrases pulled from their context and isolated from their textual setting. When subject to such extraction, words lose their efficient utility. They are no longer expressive of the will of their author. Any attempt to interpret the decedent's intent mandates consideration of all the language contained in her will and trust. *In re Estate of MacFarlane*, 313 Pa.Super. 397, 401, 459 A.2d 1289, 1291 (1983); *In re Bowman's Estate*, 332 Pa. 197, 2 A.2d 725 (1938) (court determining settlor's intent, regarding will provision creating trust, cannot restrict itself to single word used in will, but must examine entire instrument). Additionally, the words of the instruments are not viewed in a vacuum. They gain content from decedent's scheme of distribution and the facts and circumstances that surrounded her when the instruments were made. *See, e.g., MacFarlane* 313 Pa.Super. at 401, 459 A.2d at 1291.

We begin our inquiry by setting forth those portions of the documents bearing on decedent's trusts. The will reads:

THIRD—All of the balance of the contents of my house and garage shall be divided equally among all the remaining children of WILLIAM T. DOM, JR., or, if any of the

said children be dead, to the heirs of their body and where they have no heirs of their body, then among the surviving children, share and share alike....

FOURTH—I give and bequeath to BRIAN OGDEN LYNCH, the adopted son of my grandniece, ISABELLE LYNCH, the sum of ONE THOUSAND ($1,000.00) DOLLARS....

All the rest, residue and remainder of my estate, either real, personal or mixed and wheresoever situate, I give, devise and bequeath to BARCLAY–WESTMORELAND TRUST COMPANY of Greensburg, Pennsylvania, my Trustee hereinafter named for the following uses and purposes only, to wit:

The said income shall be divided into eight equal shares or interests and the same shall be paid in one share or interest to each of the following children of my two nephews, WILLIAM T. DOM, JR., and JOHN M. DOM, to wit:

ANNA DOM CASTER ... a one one-eighth interest; to LELA DOM McKENNEY ... a one one-eighth interest; to MARY JANE DOM ... a one one-eighth interest; to WILLIAM DOM III ... a one one-eighth interest; to ISABELLE DOM LYNCH ... a one one-eighth interest; to CATHERINE DOM (McCarrell) ... a one one-eighth interest; to RACHEL DOM ... a one one-eighth interest; and to JOHN M. DOM, JR., ... a one one-eighth interest equally, share and share alike for and during their natural lives, and in the event that any of the said eight beneficiaries predecease the testatrix or die at any time after my decease, then, and in such event her or his equal share of the income of this trust shall be paid to her or his child or children of his or her body until the last of the said eight grandnieces and grandnephews shall die, and, in the event the youngest child of the said eight beneficiaries, and ROBERT MILLS DOM, son of ROBERT McCUNE DOM, deceased, has not reached the age of twenty-one (21) years, then, the trust shall continue, but each of the said children of the body of the nine benefi-

ciaries shall receive an equal distributive share of the corpus of the trust, that is to say that the distribution shall be made per capita and not per stirpes, and the said ROBERT MILLS DOM shall share equally as one of the children of my grandnieces and grandnephews upon the decease of the last survivor.

Reproduced record at 39a–40a.

The trust, which was executed some two years and ten months prior to the will, contains the following language:

(b) After the death of the said ANNA W.M. OGDEN, all of the new income ... shall be paid to ANNA DOM CASTER ...; LELA DOM McKENNEY ...; MARY JANE DOM ...; WILLIAM T. DOM III ...; and ISABELLE DOM LYNCH ...; CATHERINE DOM (McCarrell) ...; RACHEL DOM ...; JOHN M. DOM, JR. ...; son of my nephew JOHN M. DOM, equally, share and share alike, for and during their natural lives, and in the event of the death of any one of the said eight (8) beneficiaries during the life or lives of any of the other beneficiaries hereinabove named, then and in such event her or his equal share of the income from this Trust shall be paid to her or his children; and in the event that the said beneficiary or beneficiaries may die for and during the life of this Trust, then to the heirs of their body until such time as all of the eight (8) beneficiaries shall die.

(c) In the event that any one or more of the said eight (8) beneficiaries as hereinabove named and designated shall die without heirs of the body, then and in such event his or her share shall go to the survivors who may then be living or, if dead, to the heirs of their body who may then be living, equally share and share alike, per stirpes and not per capita.

(d) After the death of all of said eight (8) beneficiaries as hereinbefore named, to wit, ANNA DOM CASTER, LELA DOM McKENNEY, MARY JANE DOM, WILLIAM T. DOM III, ISABELLE DOM LYNCH, CATHERINE DOM (McCarrell), RACHEL DOM AND JOHN M. DOM, JR., the income from said Trust shall continue to

be paid to the children of the said beneficiaries or the survivors of them, until the youngest child of any one of the said beneficiaries shall arrive at the age of twenty-one (21) years, then all of the corpus of this Trust and any income in the hands of the TRUSTEE shall be divided among all of the said children of said beneficiaries equally, share and share alike, per stirpes and not per capita.... if the said real estate shall have been converted into cash, of the cash invested by the said Trustee then said children shall be paid his or her full share of the said Trust in cash, or in real estate as hereinbefore set forth when the youngest child of any one of said beneficiaries arrives at the age of twenty-one (21) years.

Reproduced record at 34a–35a.

The issue to be determined is raised by the decedent's use of the phrases "heirs of the body" and "children of the body." By choice of these phrases did the decedent, at the time of the creation of the trusts, intend only blood relatives to share as beneficiaries or was the intention to include adopted children? Taken alone, the language of the instruments is inconclusive, as is evidenced by the inconsistent, varying, and interchangeable use of the terms "heirs of the body" and "children." As the lower court points out "(t)he trust uses the phrase 'heirs of the body' in its various forms exactly three (3) times. The term 'child' or 'children,' unmodified, appears eight (8) times." Opinion of the lower court at 9. Decedent's will also refers to "children," "heirs of the body," and "children of the body." Reproduced record at 39a–40a.

It is not unusual for the court to be called upon to determine the meaning of a testator's or settlor's words. It is the decedent's intent which controls;[2] however, the

2. "It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator." *Hamilton Estate,* 454 Pa. 495, 498, 312 A.2d 373, 374 (1973); *accord, Blough Estate,* 474 Pa. 177, 378 A.2d 276 (1977); *Hill Estate,* 432 Pa. 269, 247 A.2d 606 (1968), cited in *Estate of Sykes,* 477 Pa. 254, 256, 383 A.2d 920, 921 (1978). It is not unusual for the testator's intent to be unclear and for a court to resort "to canons of construction to supply the testator's likely intent."

courts have promulgated guidelines to help determine that intent.[3]

Although we have never before addressed the phrases used by decedent, the question of a testator's or settlor's intent regarding adopted children is not novel.[4] The guideline for construing intent in such cases is unmistakeable—absent a clear expression of contrary intent, adoptees are included in general designations such as "children" or "issue." *In re Estate of Tafel*, 449 Pa. 442, 296 A.2d 797 (1972). This rule of construction, first adopted in *Tafel*, has been affirmed numerous times by this Court and our Supreme Court.

Where, as here, a testator has expressed no clear intent with regard to adopted children and directs only that a distribution be made to "issue," it is a settled canon of construction that the testator intended to include adopted children within his bounty. *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978) (bequest to "issue" presumed to include adopted children); *Estate of Sewell*, 487 Pa. 379,

---

*Sykes*, 477 Pa. at 256, 383 A.2d at 921. "Absent an express direction in the instrument, however, a real intention is seldom discoverable." *In re Estate of Tafel*, 449 Pa. 442, 451, 296 A.2d 797, 802 (quoting *Fownes Trust*, 421 Pa. 476, 482, 220 A.2d 8, 11 (1966) (Roberts, J., dissenting)). As far as it is discernible, a testator's intent will be enforced, unless forbidden by public policy. *United States v. 0.20 Acre of Land in New Alexandria Borough, Westmoreland County*, 71 F.Supp. 576 (W.D.Pa. 1947). Our Supreme Court has stated that the testator's intention is to be given full expression unless "it is unconstitutional, unlawful, or against public policy." *In re Estate of Janney*, 498 Pa. 398, 401, 446 A.2d 1265, 1266 (1982).

**3.** *See, e.g., In re Hamilton's Estate*, 454 Pa. 495, 312 A.2d 373 (1973) (presumption that distribution follows intestacy laws absent expression of contrary intent); *In re Farrington's Estate*, 422 Pa. 164, 220 A.2d 790 (1966) (presumption that child not disinherited except by plain language or necessary implication); *In re Vandergrift's Estate*, 406 Pa. 14, 177 A.2d 432 (1962) (presumption that testator intended to dispose of entire estate and not die intestate as to any part of it, therefore, where possible will to be construed to avoid intestacy); *In re Hirsh's Estate*, 334 Pa. 172, 5 A.2d 160 (1939) (presumption that settlor intended equality of distribution among beneficiaries).

**4.** For a discussion of the effect of adoption on the transfer of wealth by wills and trusts, *see* Rein, *The Impact of Adoptions, Adult Adoptions, and Equitable Adoptions on Intestate Succession and Class Gifts*, 37 Vand.L.Rev. 711 (1984).

409 A.2d 401 (1979) (same). *See Tafel Estate,* 449 Pa. 442, 296 A.2d 797 (1972) (adopted children permitted to take under bequest to testator's "children"); *Estate of Flinn,* 479 Pa. 312, 388 A.2d 672 (1978) (bequest to "children" of testator's children presumed to include adoptees); *Estate of DeRoy,* 481 Pa. 403, 392 A.2d 1355 (1978) (adopted child permitted to take under bequest to "children" of testator's children; *Estate of Biddle,* 487 Pa. 616, 410 A.2d 782 (, *cert. denied, DaCosta v. DaCosta,* 101 S.Ct. 84, 449 U.S. 824, 66 L.Ed.2d 27) (1980) (adopted child permitted to take under bequest to "children and issue" of testator's grandchildren). *See also Farmers Trust Co. v. Bashore,* (498 Pa. 146, 445 A.2d 492 [1982] ) *supra* (conveyance to "children" of settlor's children in inter vivos trust presumed to include adoptee).

*In re Estate of Ketcham,* 343 Pa.Super. 534, 538–39, 495 A.2d 594, 596–597 (1985) (quoting *Estate of Riley,* 498 Pa. 395, 397–398, 446 A.2d 903, 904–905 (1982)).[5]

We agree with the court below that *Tafel* was a major statement of public policy. Opinion of the lower court at 1276. In that case our Supreme Court pointed out that "whenever the legislature has spoken on the effect of an adoption once decreed, the legislature has expressly, specifically and unequivocally mandated that the adopted person 'shall have all the rights of a child and heir of' the adoptive parents." *Tafel* 449 Pa. at 447, 296 A.2d at 799–800. The Supreme Court went so far as to call this a "legislative

---

**5.** This presumption conforms with statutory rules of will interpretation. *See Estate of Sykes,* 477 Pa. 254, 261, 383 A.2d 920, 923 (1978).

**Sec. 2514 Rules of interpretation**

In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

(7) Adopted children.—In ... construing a will making a devise or bequest to a person ... described by relationship to the testator or to another, any adopted person shall be considered the child of his adopting parent ..., except that, in construing the will of a testator who is not the adopting parent, an adopted person shall not be considered the child of his adopting parent or parents unless the adoption occurred during the adopted person's minority ...

20 Pa.Cons.Stat.Ann. Sec. 2514 (Purdon 1975 & Supp.1985).

mandate." *Id.* Our legislature has continued to promulgate this mandate. The Probate Estates and Fiduciaries Code, (Act of June 30, 1972, No. 164), provides in at least four places that adopted children shall be treated the same as biological children. *See, e.g.,* 20 Pa.Cons.Stat.Ann. Section 2108 (adopted person shall be considered the issue of his adopted parent or parents); Section 2507(4) (providing for child born or adopted after making of will); Section 2514(7) (adopted person shall be considered the child of his adopting parent or parents); and Section 6114(4) (Rules of interpretation—adopted person shall be considered the child of his adopting parent or parents) (Purdon Supp.1985).

This policy in unequivocally expressed in the wording of the Order and Decree made by the courts of this Commonwealth upon the adoption of a child. The adopted child is given "all the rights of a child and heir" of his adopting parents and is "subject to the duties of (a) child" to his parents. *See* 23 Pa.Cons.Stat.Ann. Section 2902 (Purdon Supp.1985). These rights and duties, given to all adopted children, were given to the children of Catherine Dom McCarrell.[6] Thus, "(i)n Pennsylvania a valid adoption severs the child from its natural family tree and engrafts it upon that of its new parentage. Thereafter the child attains the status, in law, of a natural child of the adopting parents." *In re Schwab's Adoption,* 355 Pa. 534, 536, 50 A.2d 504, 505 (1947).

Adoption did not exist at common law, it is a creature of our legislature.[7] In enacting a statutory scheme of adop-

---

6. For a copy of the language contained in the adoption decrees of Malcolm W. McCarrell and Rachel McCarrell McCune, *see* note 1 *supra.*

7. The first general legislation relating to adoption in Pennsylvania was the Act of May 4, 1855, P.L. 430. Prior to this time, "adoption arose through special legislative action in individual instances." *In re Collins' Estate,* 393 Pa. 195, 201, 142 A.2d 178, 181 (1958). In 1855 and in all subsequent Adoption Acts, the adopted person was given "all the rights of a child and heir" of the adoptive parents. Act of May 4, 1855, Pub.L. 430, Sec. 7; Act of May 19, 1887, Pub.L. 125; Act of May 9, 1889, Pub.L. 168; Act of June 1, 1911, Pub.L. 539; Act of April 4, 1925, Pub.L. 127, Sec. 1; Act of June 30, 1947, Pub.L. 1180, Sec. 1; Act of August 26, 1953, Pub.L. 1411, Sec. 1; Act of July 24, 1970, Pub.L.

tion, however, our legislators "did not amend human nature; (they) yielded to it." *In re Estate of Coe*, 42 N.J. 485, 490, 201 A.2d 571, 575 (1964). Adoption statutes did not create the social phenomenon of adoption, they gave legal recognition to familial relationships which society had "always assumed, and translated into a rule of law what the Legislature found to be (the people's) common expectation and wish." *Id.* at 489, 201 A.2d at 574, quoted in *Tafel* 449 Pa. at 450, 296 A.2d at 801. "The successive statutes, examined historically and analytically, portray a steady broadening of the relationship between adopting parent and adopted child." *Ottavi v. Timothy Burke Stripping Co.*, 140 Pa.Super. 389, 395, 14 A.2d 188, 191 (1940). Today, that relationship is so all encompassing that it has become merely the relationship between parent and child. In the eyes of the parent, the child, society, and the Commonwealth of Pennsylvania, adopting parent and adopted child are indiscernable from any other parent and child.[8]

Appellants urge us to find that the terms "heirs of the body" and "children of the body" manifest an intention on the behalf of Anna Ogden to exclude adopted children from sharing as beneficiaries of the trust. These terms, however, are not conclusive of such a result. It is a question of first impression in this state whether these terms alone express an intent to limit the class of beneficiaries to blood

620, No. 208, Secs. 101–603; Act of October 15, 1980, Pub.L. 934, No. 163, Sec. 1. *See* 23 Pa.Cons.Stat.Ann. Sec. 2902 (Purdon Supp.1985). *See also In re Estate of Tafel*, 449 Pa. 442, 447 n. 5, 296 A.2d 797, 799 n. 5 (1972).

**8.** We cannot believe it probable that strangers to the adoption would differentiate between the natural child and the adopted child of another. Rather we believe it more likely that they accept the relationships established by the parent whether the bond be natural or by adoption and seek to advance those relationships precisely as that parent would. None of us discriminates among children of a relative or friend upon a biological basis. See *In re Patrick's Will*, 259 Minn. 193, 106 N.W.2d 888, 890 (Sup.Ct.1960); *In re Trusteeship Agreement with Nash*, 265 Minn. 412, 122 N.W.2d 104, 109 (Sup.Ct. 1963). We ought not impute to others instincts contrary to our own.
*In re Estate of Tafel*, 449 Pa. 442, 450–51, 296 A.2d 797, 801 (1972) (quoting *In re Coe*, 42 N.J. 485, 489, 201 A.2d 571, 574 (1964)).

relatives to the exclusion of adopted relatives.[9] In this case we hold, with a growing number of jurisdictions, that they do not.[10] Use of such terms "without further elaboration is

9. Since our Supreme Court's decision in *Tafel,* the courts of this Commonwealth have construed similar language as failing to exclude adopted children from benefiting under a will or trust. *See, e.g., Farmers Trust Co. v. Bashore,* 498 Pa. 146, 445 A.2d 492 (1982) (conveyance to next of kin "of the blood of her father" cannot reasonably be read to convey only to blood relatives); *In re Biddle's Estate,* 487 Pa. 616, 410 A.2d 782, *cert. denied, DaCosta v. DaCosta,* 449 U.S. 824, 101 S.Ct. 84, 66 L.Ed.2d 27 (1980) (children and issue); *In re DeRoy's Estate,* 481 Pa. 403, 392 A.2d 1355 (1978) (children); *Estate of Flinn,* 479 Pa. 312, 388 A.2d 672 (1978) (children); *Estate of Sykes,* 477 Pa. 254, 383 A.2d 920 (1978) (issue); *In re Tafel's Estate,* 449 Pa. 442, 296 A.2d 797 (1972) (children); *In re Estate of Ketcham,* 343 Pa.Super. 534, 495 A.2d 594 (1985) (issue); *In re Riley's Trust,* 30 Pa.Fiduc. 51 (1980) (use of word "born" does not preclude adoptee of testator's grandchild from sharing as "issue"). Prior to *Tafel,* such terms were frequently used to create an intent to exclude such children. *See, e.g., In re Benedum's Estate,* 427 Pa. 408, 235 A.2d 129 (1967) (children and issue); *In re Holton's Estate,* 399 Pa. 241, 159 A.2d 883 (1960) (children, descendants, and issue); *In re Collin's Estate,* 393 Pa. 195, 142 A.2d 178 (1958) (descendants). *See also In re Estate of Tower,* 463 Pa. 63, 343 A.2d 671 (1975) (court decision that testator intended, by use of terms "children," "grandchildren," "issue," and "lineal descendants," to exclude adopted children from testamentary trust was res judicata, barring relitigation of claim despite subsequent decisions enlarging rights of adopted children).

10. *Weilert v. Larson,* 84 Ill.App.3d 151, 39 Ill.Dec. 520, 404 N.E.2d 1111 (1980) (phrase "issue of their body" does not show plain intent to exclude adopted child); *In re Trusts Created by Agreement with Harrington,* 311 Minn. 403, 250 N.W.2d 163 (1977) (phrase "issue of her body" does not evince intent to exclude adopted children). *Cf. Wheeling Dollar Savings & Trust Co. v. Hanes,* 160 W.Va. 711, 237 S.E.2d 499 (1977) (adopted children shall take under words "child" or "children" or any general words loosely, if not technically synonymous with such words, including but not limited to "natural children," "descendants," "heirs," "issue," or any similar language). *But, see, Reedy v. Propst,* 288 S.E.2d 526 (W.Va.1982) (use of phrase "child or children born of her body" prevented grandson, adopted when he was 23 years old, from benefiting under will).

Many jurisdictions have construed similar phrases in favor of adoptees.

*See, e.g., In re Estate of Heard,* 49 Cal.2d 514, 319 P.2d 637 (1957); *Brown v. Trust Co.,* 230 Ga. 301, 196 S.E.2d 872 (1973) (gift of remainder under testamentary trust to testator's "nephews and nieces" presumptively includes child adopted by one of testator's sisters); *Elliott v. Hiddleson,* 303 N.W.2d 140 (Iowa 1981) (gift of remainder to children's "lineal heirs" under testamentary trust presumptively includes child adopted by daughter after testator's

not sufficiently explicit to exclude an adopted child from the benefits of (a) trust." *In re Trust Created by Agreement with Harrington*, 311 Minn. 403, 410, 250 N.W.2d 163, 167 (1977).

Two recent decisions of our Supreme Court validate this holding, *Estate of Riley*, 498 Pa. 395, 446 A.2d 903 (1982) and *Farmers Trust Co. v. Bashore*, 498 Pa. 146, 445 A.2d 492 (1982). In *Bashore* the court held that a trust that provided, in the event all previous directions should fail, for conveyance of the corpus "to (the settlor's) next of kin 'of the blood of her father' cannot reasonably be read as demonstrating an intention on the part of (the) settlor to convey the trust income or principal solely to blood relatives." *Bashore*, 498 Pa. at 153, 445 A.2d at 496. The issue facing the court in *Riley* was whether the adopted children of one of the testator's grandchildren were entitled to share in the principal of a testamentary trust. *Riley* 498 Pa. at 396, 446 A.2d at 904. The item setting up the trust referred to "grandchildren" and "issue." *Id.* However, it was "argued that ... references to beneficiaries in other paragraphs of his will and codicil as 'issue born ... of children of mine' and 'grandchildren ... born in my lifetime' demon-

death); *In re Thompson*, 53 N.J. 276, 250 A.2d 393 (1969) (postponed testamentary gift to daughter's "lawful issue" presumptively includes child adopted by daughter after testator's death); *In re Estate of Coe*, 42 N.J. 485, 201 A.2d 571 (1964) (bequest to "lawful children" of Theodora presumptively children adopted by Theodora after testatrix' death); *Estate of Tafel*, 449 Pa. 442, 296 A.2d 797 (1972) (gift of remainder to child's "children" under testamentary trust presumptively includes children adopted by son after testator's death); *Vaughn v. Gunter*, 458 S.W.2d 523 (Tex.Civ.App.), aff'd, 461 S.W.2d 599 (1970) (gift of remainder to son's "children" under inter vivos trust presumptively includes child adopted by son after settlor's death); *Wheeling Dollar Sav. & Trust Co. v. Hanes*, 160 W.Va. 711, 237 S.E.2d 499 (1977) (gift of remainder to life beneficiary's "children" under irrevocable inter vivos trust presumptively includes children adopted by life beneficiary after settlor's death); *see also McCaleb v. Brown*, 344 So.2d 485 (Ala.1977); *Wallin v. Torson*, 88 Mich.App. 775, 279 N.W.2d 310 (1979); *In re Estate of Park*, 15 N.Y.2d 413, 260 N.Y.2d 169, 207 N.E.2d 859 (1965).

Rein, *The Impact of Adoptions, Adult Adoptions, and Equitable Adoptions on Intestate Succession and Class Gifts*, 37 Vand.L.Rev. 711, 734 n. 97 (1984).

strate(d) a clear intent to exclude adopted children from participation in the trust." *Id.* The court disagreed, stating that such references could not "be read to indicate a clear intent to exclude adoptees as beneficiaries even within these paragraphs." *Id.* If the phrases "of the blood" and "issue born" do not, alone, evince a clear intent to exclude adopted children, then neither do the phrases "children of the body" and "heirs of the body."

The appropriateness of this ruling is manifest in the instant case. The scheme of distribution and other facts bearing on the question establish with reasonable certainty that it was not Anna Ogden's intent to exclude adopted children from benefiting under the instruments she had made. *See Estate of Sykes,* 447 Pa. 254, 256, 383 A.2d 920, 921–922 (1978) (seeking to ascertain intent with reasonable certainty, court examines words of instrument, scheme of distribution, circumstances surrounding execution, and other facts bearing on the question).[11] Anna Ogden was no stranger to the establishment of familial relationships through adoption. At the time of her death she had a great grandnephew and a great grandniece by adoption. The nephew, Brian Ogden Lynch, was the son of named beneficiary, Isabelle Dom Lynch, prior to the making of either the will or trust. In fact, decedent made a gift of one thousand dollars to "BRIAN OGDEN LYNCH, the adopted son of (her) grandniece, ISABELLE LYNCH," in the fourth sec-

11.    "It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator. . . . To ascertain this intent, a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding the execution of the will and other facts bearing on the question." *Sykes Estate,* 477 Pa. 254, 257, 383 A.2d 920, 921 (1978). *Accord, e.g., Hamilton Estate,* 454 Pa. 495, 312 A.2d 373 (1973). Only if the intent does not appear with reasonable certainty will a court resort to canons of construction. *Houston Estate,* 491 Pa. 339, 421 A.2d 166 (1980). *Accord, McDowell National Bank v. Applegate,* 479 Pa. 300, 388 A.2d 666 (1978); *Sykes Estate, supra. Estate of Flagg,* 501 Pa. 38, 44, 459 A.2d 740, 743 (1983). "This well-settled principle applies equally to trusts." *Estate of Reynolds,* 494 Pa. 616, 627, 432 A.2d 158, 163 (1981) (citing *Pew Trust,* 411 Pa. 96, 191 A.2d 399 (1963); *Walton Estate,* 409 Pa. 225, 186 A.2d 32 (1962)).

tion of her will, the same provision which created the trust now under consideration. Reproduced Record at 39. The gift to her adopted great grandnephew is directly above the trust created in the will. In one paragraph of the instrument, Anna Ogden expressly refers to "the adopted son of (her) grandniece." She is not shy about using the word adopted. Yet, appellants would have us believe that a scant two paragraphs later she sought to exclude Brian Ogden Lynch and any other persons who might be adopted by her grandnieces and grandnephews from sharing in the trust without any specific reference to them. Decedent knew and used the word "adopted" to identify a beneficiary in one part of her will. If she wanted to exclude adopted children from the class of children of named beneficiaries, why didn't she use the word to make her wishes known? She was certainly capable of using it to identify persons whom she did not intend to benefit from the trust. She did not do so.

Instead of utilizing the word "adopted," which is clear and unequivocal, the instruments refer to "children," "survivors," and "heirs of the body." [12] We cannot find that one of a number of phrases used interchangeably in an instrument creates an intent against all evidence and reason. "To hold otherwise would cast a cloud over this state's policy toward adopted children and add to the reports another mindless case based on sham 'intent' manifested in virtually meaningless common-law phrases." *Harrington* 311 Minn.

12.    In my view, there is no sound basis for concluding that the settlor, by employing (the terms "issue" and "children") intended to exclude adopted children from sharing in his bounty. It is far more likely, and more reasonable to assume, that the absence of an express direction with respect to the matter indicates that the settlor failed to advert to the possibility of adopted children, their inclusion or exclusion, and, accordingly, expressed no explicit direction one way or the other. Had he adverted to the question, and determined not to include adopted children as beneficiaries of the trust estate, it is reasonable to assume that he would not have restricted himself to the cryptic designations (used), but would have employed language which would have left no doubt as to his intent.
*In re Estate of Tafel,* 449 Pa. 442, 451, 296 A.2d 797, 802 (citing *Fownes Trust,* 421 Pa. 476, 482–84, 220 A.2d 8, 11–12 (1966) (Roberts, J., dissenting).

at 410, 250 N.W.2d at 167. *See Tafel* 449 Pa. at 151–52, 296 A.2d at 802. Rather than do this, we follow the adage that "in interpreting wills, the law will impute to the testator's words such meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice." *Estate of McKenna,* 340 Pa.Super. 105, 110, 489 A.2d 862, 865 (1985) (quoting *In re Estate of Umberger,* 369 Pa. 587, 592–593, 87 A.2d 290, 293 (1952)).

Accordingly, the order of the lower court is affirmed.