570 A.2d 544

**In re ESTATE OF William Horace WARNER, Deceased.**

**Appeal of Leonora M. WARNER and Lenora Reese.**

Superior Court of Pennsylvania.

Argued Oct. 13, 1989.

Filed Feb. 16, 1990.

Errol S. Miller, Pittsburgh, for appellant.

Ronald G. Backer, Pittsburgh, for Mellon Bank, participating party.

Kenneth E. Lewis, Pittsburgh, for Finout and Leichliter, participating parties.

Before WIEAND, TAMILIA and HESTER, JJ.

WIEAND, Judge:

William Horace Warner died testate on March 9, 1985, and letters testamentary were duly issued to Mellon Bank, N.A., the executor-trustee named in the decedent's Last

Will and Testament. Pursuant to this Will, two trusts were created for the support of the decedent's wife during her lifetime. The first trust was a marital trust (Fund A), and the second trust was a residuary trust (Fund B). Fund A was to consist of

> "such amount, if any, as when added to other property passing to my wife and qualifying for the Federal estate tax marital deduction in my estate and to any property paid directly to the Trustee and allocated by it to Fund A, will equal the excess of (i) the value of my gross estate as finally determined for such tax purposes, reduced by all deductions actually allowed other than the marital deduction, over (ii) the amount which will result in a Federal estate tax in my estate equal to the total of the available unified credit and the credit for state death taxes (other than those imposed solely to obtain the credit under section 2011 of the Internal Revenue Code)."

The trustee was directed to invest and reinvest the trust res and pay the income to the testator's widow. She was given a power of appointment with respect to the trust and also the power to invade principal. Upon her death, if the power of appointment were not exercised, the balances of principal and income were to be added to Fund B.

The residue of Warner's estate was held in trust as Fund B. The trustee was given the power to invest and reinvest Fund B and to distribute net income and principal, in the trustee's discretion, to Mrs. Warner. Upon Mrs. Warner's death, the trustee was authorized to distribute income and, when necessary, principal to Warner's daughter, Lenora Reese, who was also permitted to invade principal to the extent of $5,000.00 per year. Upon the daughter's death, the remaining trust principal was to be divided into two equal shares for Warner's granddaughters, Linda Lenore Finout and Marie Kristine Leichliter. Warner's will further provided that principal from the share for Marie Kristine Leichliter was to be used generously to provide for the welfare and comfortable support of Warner's great-grandson, Brian Lee Leichliter.

The decedent's estate contained cash in the amount of $2,544.41 and a commercial property located near the intersection of Northern Pike and Business Route 22 in Monroeville, Allegheny County. Immediately adjacent to and contiguous to this commercial property was a parcel of real estate which had been owned jointly by the decedent and his wife, Leonora M. Warner, as tenants by the entireties. This tract was owned solely by Mrs. Warner following her husband's death, and she has now conveyed it to her daughter and son-in-law, Lenora and Clint Reese. It will hereinafter be referred to as the Reese property.[1]

At the time of Warner's death, three structures were located on the foregoing tracts. Two of the structures, which had been rented to Foto Hut, Facelifters, Ltd., and Warners Flowers, Inc., were located on the parcel now owned by the decedent's estate. A structure leased to and occupied by Eat'N Park Restaurants, Inc., although situated primarily on property owned by the estate, protruded onto the Reese property. On the Reese property was also located a parking lot which serviced Eat'N Park. The total annual rental from the four leases was $61,680.00 per year.[2]

The estate owes Pennsylvania inheritance tax in the amount of $33,749.44, plus interest and penalty, if any. Repairs to a building and parking lot are needed at an approximate cost of eleven thousand ($11,000.00) dollars. Administrative costs, including commissions of the executor-trustee, counsel fees, real estate taxes, etc., must also be paid. Unfortunately, the decedent's estate has insufficient liquid assets to pay the debts and taxes which it owes. The estate, therefore, attempted to borrow the necessary funds, giving as security a mortgage on the real estate.

1. In addition to the Reese property the decedent and his wife owned by the entireties personal property having a value of $176,607.51 and consisting of cash, certificates of deposit, savings certificates and stocks. This has been delivered to the testator's widow and is not a part of the decedent's estate.

2. The monthly rentals were as follows: Eat'N Park—$1,200.00; Foto Hut—$1,900.00; Facelifters, Ltd.—$1,980.00; and Warners Flowers, Inc.—$60.00. Warners Flowers was wholly owned by Lenora Reese, the decedent's daughter.

The mortgage transaction failed of consummation, however, when a title search disclosed that a portion of one building was on the Reese property and the decedent's daughter, Lenora J. Reese, refused to cooperate in perfecting the estate's title or the lender's mortgage interest.

For similar reasons, the executor-trustee has deemed it inadvisable to sell the real estate which is the principal of the trust. Because at least a portion of the commercial property owned by the decedent's estate is dependent upon the Reese property, it was reasoned, a sale of the trust real estate without a simultaneous sale of the Reese property would be economically unfeasible. Indeed, it was feared that in the event of such a sale, the Reeses would be the only buyers, and the price, therefore, would be inadequate. Moreover, Article VI of the Will contained the testator's belief that the real estate should be retained as an investment by the trust. Therefore, the executor filed a petition in the Orphans' Court of Allegheny County to obtain permission to pay inheritance tax, costs of administration, repairs, real estate taxes, etc., out of income. This was opposed by Leonora Warner, the widow who is 95 years of age, and Lenora Reese, the daughter, who is the alternate income beneficiary of the trust. The owners of the remainder interests have consented to the payment of debts, taxes and costs of administration out of income.

The Orphans' Court, after an evidentiary hearing, granted the executor's petition and directed that the inheritance tax, administration expenses, costs of repairs, etc. be paid from income. However, thirty-two (32%) percent of the rent received from the Eat'N Park lease was directed to be paid to the Reeses and was not to be deemed income to the Estate. Exceptions were overruled, and the income beneficiaries appealed. They contend that it was error to direct that the inheritance tax, costs of administration, repairs, etc. be paid out of income.

■ The costs of making repairs in the amount of eleven thousand ($11,000.00) dollars are properly payable from income. Real estate taxes and other costs of maintaining

the commercial real estate and doing business in Monroeville are also payable from income. There is nothing in the testator's will to require otherwise, and the provisions of 20 Pa.C.S. § 8111(a) direct that "[a]ll ordinary expenses and charges, incurred in connection with the trust estate or with its administration and management, shall be paid out of income...."

In Article Nine of the testator's will, he provided as follows:

> I direct that all Estate, inheritance and other taxes in the nature thereof, together with any interest and penalties thereon, becoming payable because of my death with respect to the property constituting my gross Estate for death tax purposes, whether or not such property passes under this Will, shall be paid from the principal of my residuary Estate....

This is a clear directive to the executor-trustee. Inheritance taxes are to be paid out of principal. This intention must be our lodestar. "[I]t can be denied only [if] it is unconstitutional, unlawful or against public policy." *In re Janney's Estate*, 498 Pa. 398, 401, 446 A.2d 1265, 1266 (1982).

The executor-trustee contends, however, that this mandate is rebutted by Article Six of the Will where the testator wrote as follows:

> It is my belief that my real estate should be retained as an investment for my trusts. Therefore, I give full power to my Executor and Trustee to retain and manage the same, to establish reserve accounts, to mortgage it as necessary to provide cash for taxes and other expenses and to use both the income and principal of Fund B for mortgage payments; PROVIDED, however, that such power shall not be exercised in such manner that it would disqualify Fund A for the purposes of the marital deduction under the Federal Estate tax laws.

Although the Orphans' Court found this argument persuasive, we are constrained to disagree. This language does not contain a mandate or direct the executor-trustee to

retain the decedent's real estate. Neither does it contradict the testator's instruction to pay the inheritance tax out of principal. The testator's "belief" that his real estate should be maintained as an investment is nothing more than precatory language which is not binding on the executor-trustee. The testator did not instruct the trustee to retain and manage his real estate but merely gave the trustee authority to do so in its discretion.

Testamentary intent must be ascertained by carefully reviewing all of the language contained in the will. *In re Estate of Ogden*, 353 Pa.Super. 273, 276, 509 A.2d 1271, 1273 (1986) (citations omitted). "[T]he words of the instrument are not viewed in a vacuum," *Id.*, but as part of an overall testamentary plan. See: *Estate of Zerbey*, 313 Pa.Super. 297, 459 A.2d 1237 (1983). Specific "[w]ords or phrases will be rejected when they have the effect to subvert or defeat testator's whole testamentary scheme and divert the bounty from those whom he obviously intended to benefit." *Hill Estate*, 432 Pa. 269, 278–279, 247 A.2d 606, 612 (1968), citing *March Estate*, 357 Pa. 216, 219, 53 A.2d 606, 607 (1947). The testator's will in this case leaves no doubt that it was his wife and daughter (and not his real estate) who were the primary objects of his bounty. His wife was given all the income from the testator's estate and the absolute power to invade the principal in the marital trust. His daughter was given all the income from the testator's estate following his wife's death. "[I]n nearly all instances of long continuing trusts, the life tenants are the primary objects of the bounty of testators, and their incomes should be preserved to them, as far as it is possible to do so, even though it may result in [the] ultimate diminishment of principal to be paid to far [removed] remaindermen." *Nirdlinger's Estate*, 327 Pa. 171, 173–174, 193 A. 30, 32 (1937). Here, the intent of the testator was clear. To provide maximum income for his widow and/or daughter, the testator specifically directed that the inheritance tax be paid out of principal.

The executor argues, however, that it is economically unfeasible to pay the inheritance tax from principal. We are unable to agree. We observe, initially, that the orphans' court did not make a finding that the executor-trustee was unable to pay the inheritance tax from principal. Indeed, such a finding would not have been warranted by the evidence.

The commercial real estate, including the Reese property, was appraised as of the date of the testator's death at $628,000.00. An appraiser opined that the actual rentals received were less than the fair rental values for comparable commercial properties and that the fair market value of the premises, if sold upon termination of the existing leases, would be in excess of one million dollars. The executor-trustee, as we have observed, is expressly authorized to mortgage the real estate to provide cash for taxes and other expenses.[3] The executor-trustee has averred difficulty in mortgaging the entire commercial property because a portion of one building is situated on the Reese property. However, it has not been alleged, the evidence does not show, and the court did not find that funds could not be borrowed on the security of a portion of the real estate forming the corpus of the trust.

Similarly, there is no reason to believe that a portion of the trust real estate could not be sold to realize funds needed to pay inheritance tax, if this became necessary. Although the executor has averred that Monroeville Borough officials *probably* will not approve a subdivision, the evidence is insufficient to support such a finding, and the orphans' court did not find in fact that a sale of a portion of the real estate to pay inheritance taxes was either impossible or unfeasible.

On the present state of the record, therefore, there does not appear to be an adequate reason for denying the efficacy of the testator's instruction that the inheritance tax be

---

3. The executor-trustee is authorized to use both income and principal from Fund B to make mortgage payments, but there is no authority in the will for the executor to use income from Fund A for such purpose.

paid from principal. We are constrained to hold, therefore, that it was error to direct that the inheritance tax be paid from income.

■ Compensation for an executor-trustee and counsel fees "may be apportioned between income and principal as the court may direct." 20 Pa.C.S. § 8111(b). In this case, the court made no attempt to apportion the executor-trustee's compensation or the fees of counsel between income and principal. Rather, in reliance on the precatory language contained in Article Six of the Will, the court held that fees and commissions were to be paid out of income. This language, we have held, is not mandatory—it merely permits the executor-trustee to retain the testator's real estate. Therefore, it is inadequate to overcome the statutory mandate to apportion commissions and fees between principal and income. The need for a fair apportionment under the circumstances of this case is readily apparent.

The order of the Orphans' Court is affirmed in part and reversed in part. The portion of the Orphans' Court's order which directed the payment of real estate taxes, repairs and business privilege taxes from income is affirmed. The direction of the orphans' court to pay inheritance tax out of income is reversed. The inheritance tax shall be paid out of principal. The court's direction to pay the compensation of the executor-trustee, the fees of counsel, and other costs of administration out of income is also reversed, and the case is remanded to the orphans' court for apportionment of the costs of administration between principal and income. Jurisdiction is not retained.