607 A.2d 265

**TRUST AGREEMENT OF CYRUS D. JONES DATED JUNE 24, 1926. (Four Cases)**

**Appeal of Lucinda HARDZOG and Stephen Taylor Hay.**

**Appeal of Audrey Jones EAGAN.**

**Appeal of Shirley SCHULZ.**

**Appeal of James L. HEAD, Guardian Ad Litem for Annchen Louise Hardzog, Hilary Hay Hardzog, Courtney Croom Hardzog, Catherine Marie Hay, Melanie Lynn Watkins, Justin Robert Watkins, Ivy Kay Grady, Michelle Ann Grady and Alexander Engel, and Trustee Ad Litem for All Unborn or Unascertained Persons Who May Be Persons Adopted by Cyrus D. Jones' Descendants or the Descendants of Such Persons.**

Superior Court of Pennsylvania.

Argued June 20, 1991.

Filed April 14, 1992.

Application to Discontinue Appeal
Denied May 8, 1992.

John R. Suria and John F. Meigs, Philadelphia, for appellants in No. 278.

Minturn T. Wright, III, Philadelphia, for Mark T. Munger, participating party.

Before ROWLEY, President Judge, and CAVANAUGH and WIEAND, JJ.

CAVANAUGH, Judge.

Appellants appeal a declaratory judgment from the Orphans' Court division of the Chester County Court of Common Pleas. Appellants are the adopted descendants of Cyrus D. Jones and seek to receive distributions from a Trust Agreement executed by Cyrus D. Jones in 1926. In 1989, the trustees filed their First Account of the Trust with the Orphans' Court and sent notice of the existence of the trust and the audit to settlor's adopted descendants. The adopted descendants presented claims against the trust. The trustees and income beneficiaries of the trust petitioned the Orphans' Court Division of the Chester County Court of Common Pleas for a declaratory judgment that the words "lawful issue of the blood," as used in the 1926 Trust Agreement, exclude adopted descendants of Cyrus D. Jones.

The Orphans' Court found no ambiguity in the phrase "lawful issue of the blood," as used in Cyrus D. Jones' 1926 Trust Agreement, and held that the phrase expressed with reasonable certainty the settlor's intent to exclude adopted descendants from distributions of the trust. From this decree, appellants take the instant appeal. We reverse.

On appeal, appellants contend that the phrase "lawful issue of the blood" is ambiguous and that in the absence of settlor's clearly expressed intent to exclude adopted descendants, this Court should apply the presumption, announced by the Supreme Court of Pennsylvania in *Estate of Tafel*, to include adopted descendants in class gifts. *Estate of Tafel*, 449 Pa. 442, 296 A.2d 797 (1972) (plurality opinion). Appellants urge this Court to follow a line of cases decided after *Tafel*, which allow adopted descendants to receive distributions from class gifts under such designations as "issue," *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978); "issue born ... of children of mine" and "grandchildren," *Estate of Riley*, 498 Pa. 395, 446 A.2d 903 (1982); and "children of the body" and "heirs of the body," *Estate of Ogden*, 353 Pa.Super. 273, 509 A.2d 1271 (1986).

Appellees contend, however, that settlor effectively manifested his intent to benefit only his biological descendants by use of the phrase "of the blood." In support of this position, appellees analyze passages extracted from several cases, in which courts have used the terms "blood descendants" or "blood relatives" as a contrast to the term "adopted descendants." From this stylistic analysis, appellees conclude blood is generally considered a distinguishing factor between biological and adopted descendants. Consequently, appellees urge us to decide that the Orphans' Court properly limited trust distributions to biological descendants because settlor's use of the phrase "of the blood" evidenced an intent to exclude his adopted descendants.

■ Although the cases cited by appellees use the terms "blood descendants" or "blood relatives," we find that these cases do not necessarily conclude that use of the words "blood" or "blood descendants" or "blood relatives" shows a clear intent by testators to exclude adopted descendants. Instead, the cases interpreted whether testators intended to include or exclude adopted descendants from trust or will distribution by such phrases as "issue," "children," "heirs of the body," and "children of the body." More important than their passing use of words "blood descendants" or "blood relatives," these cases deciphered testators' intent regarding contested phrases by applying an established legal framework, including canons of construction. Moreover, in most of these cases, adopted descendants are found to be included among the class of beneficiaries entitled to trust distributions despite the fact that they were adopted into the class rather than born into the class. Accordingly, we now turn to the Jones Trust Agreement of 1926 and provisions of the document bearing on the parties' recovery.

Cyrus D. Jones (settlor) died in 1929. On June 24, 1926, settlor created an irrevocable trust which provided for each of settlor's four children by name in four separate but identical sections. When settlor created the 1926 trust, three of settlor's sons, Harry, Arthur, and Frederick, ages 44, 49, and 39 respectively, were married but did not have

any children. (Inexplicably, the parties briefs are not in agreement on these ages.) Settlor's daughter, Helen, however, had already given birth to three children when settlor executed the trust.

Under the Trust Agreement, each of settlor's four children receive one quarter of the income from the trust for life. After each child's death, the trustee is directed to pay the deceased child's share of income in "equal shares per stirpes" to "the lawful issue of the blood of said [deceased child]...."

The Trust Agreement also provides that for all four of settlor's children, if at any time after their death, the child does not have any living issue, the trustee is directed to pay the deceased child's share of income "in equal shares" to the living siblings. Further, if the deceased child does not have any living issue and there are no living siblings, the trustee is directed to pay the deceased child's share of income "in equal shares per stirpes" to the "lawful issue of the blood of said [deceased siblings]...."

The Trust Agreement also contains a provision which precludes distribution of income or principal to the "issue of any person per stirpes" if "such person at such time has living an ancestor, who is a lineal descendant of the blood of the GRANTOR and from whom such person is lineally descended."

Finally, the Trust Agreement provides that the trust terminates upon the death of the last survivor of seven of settlor's descendants, named in the document. The named descendants are settlor's four children and three grandchildren.[1] When the trust terminates, the trustees are directed to distribute the corpus or principal "in equal shares per stirpes" to the "lawful issue of the blood" of settlor's four children. The trust provides for distribution in accordance with the intestacy law to the "heirs-at-law" and "next of kin" of the settlor should there be no living "lawful issue of

1. Cyrus J. Quinn, grandson of the settlor and biological son of settlor's daughter, Helen, is the last survivor of the seven persons named in the trust for purposes of the termination provision.

the blood" of settlor's four children at the termination of the trust.

Two of settlor's four children adopted children of their own after settlor's death. Settlor's son Arthur and his wife adopted two baby girls, under one years old, in 1932 and 1934, respectively. In 1934, settlor's son Harry adopted the ten year old daughter of his wife. Prior to settlor's death, settlor's daughter Helen already had given birth to three children (who are named in the 1926 Trust Agreement) and did not adopt or give birth to more children after settlor's death. Settlor's son Frederick died childless.

All four of settlor's children are now deceased. When settlor's son Frederick died in 1940, the three remaining siblings, Arthur, Harry and Helen, received Frederick's share of trust income. When Arthur died in 1950, the two remaining siblings, Harry and Helen, received Arthur's share of trust income instead of Arthur's two adopted daughters. In 1971, Harry died and his sister, Helen received his share of trust income instead of Harry's adopted daughter. In 1981, Helen died and the income from the trust was paid in equal one third shares to Helen's son Cyrus, Helen's daughter Barbara, and four children of Helen's deceased daughter, Mary. In 1984, Helen's daughter, Barbara died and her share of income has been paid to her two sons.

The sole issue presented in this appeal is whether settlor clearly expressed his intent to exclude adopted descendants from trust distributions by use of the phrase "lawful issue of the blood."

When interpreting a trust instrument, the intent of the settlor is paramount and if that intent is not unlawful, it must prevail. *Estate of Taylor*, 361 Pa.Super. 395, 398, 522 A.2d 641, 642 (1987). To ascertain this intent, a court must examine the language of the document, the scheme of distribution, and the facts and the circumstances existing at the creation of the trust. *Farmers Trust Co. v. Bashore*, 498 Pa. 146, 150, 445 A.2d 492, 494 (1982). The

settlor's intent must be determined with such reasonable certainty that little doubt exists of this intent. *Sykes* 477 Pa. at 257, 383 A.2d at 921. If the settlor's intent remains uncertain, a court turns to canons of construction to supply the settlor's likely intent. *Id.*, 477 Pa. at 257, 383 A.2d at 921.

Appellees urge this Court to find that settlor's use of the words "lawful issue of the blood" in the Trust Agreement, manifests settlor's intention to exclude adopted descendants from sharing the benefits of the trust. Appellees attempt to assign meaning to an entire trust instrument on the basis of a few words, which are extracted from their context, isolated and then magnified to obscure consideration of the remaining words and the scheme of distribution in the instrument. *Ogden* 353 Pa.Super. at 276, 509 A.2d at 1273. When subject to such extraction, words no longer express the intent of their author. *Ogden,* 353 Pa.Superior Ct. at 276, 509 A.2d at 1273.

■ Our courts considered similar language to the words at issue in two cases and found the words failed to indicate a clear intent to exclude adoptees as beneficiaries. In *Estate of Riley,* our Supreme Court stated that references in a will and codicil to beneficiaries as "issue born ... of children of mine" fail to indicate a clear intent to exclude adoptees. *Riley* 498 Pa. at 397, 446 A.2d at 904. In *Ogden,* this Court held that the phrases "children of the body" and "heirs of the body" do not evince a clear intent to exclude adopted children from the class of beneficiaries entitled to trust distributions. *Ogden,* 353 Pa.Superior Ct. at 286, 509 A.2d at 1278.

Instantly, the language of the Trust Agreement does not disclose the settlor's intent with reasonable certainty. Use of the words "lawful issue of the blood" alone, without further elaboration, does not show with reasonable certainty settlor's intent to exclude adopted descendants. If the phrases "issue born ... of children of mine," "children of the body" and "heirs of the body" do not, alone, evince a clear intent to exclude adopted descendants, then neither does the phrase "lawful issue of the blood." Where settlor took pains to prescribe equally for his four children during their lifetimes and for his children's lines of descendants, it

is inconsistent to assign settlor an intent to exclude beneficiaries from two of his children's lines because they are adopted descendants.

██ Other language in the Trust Agreement does not reveal settlor's intent with reasonable certainty. The trust provides that each of settlor's four children receive a one quarter share of income from the trust and that the "lawful issue of the blood" of any of settlor's deceased children take their parent's share in "equal shares per stirpes." The Trust Agreement provides the income share of settlor's deceased children should be channelled "in equal shares" to their living siblings should they die without "lawful issue of the blood." Alternatively, should settlor's children die without "lawful issue of the blood" and there remain no living siblings, the deceased children's share of income passes "in equal shares per stirpes" to the "lawful issue of the blood" of their deceased siblings. This language does not expressly include or exclude adopted children.[2]

██ Settlor's scheme of distribution also does not establish with reasonable certainty settlor's intent to exclude adopted descendants. Rather, settlor's scheme of distribution reveals an intent to treat his own children and each of his children's lines equally in the distribution of trust income. The Trust Agreement separately addresses each of settlor's four children and methodically repeats identical provisions granting each child equal shares of trust income and provides "equal shares per stirpes" for the "lawful issue of the blood" of his four children.

Equality of distribution is the hallmark of settlor's trust. Settlor's scheme of distribution reveals an intent to treat each of his children's lines equally when all of his children are alive and when all of his children are dead. *Bashore*

---

**2.** Settlor may have merely intended that the words "lawful issue of the blood" effectuate a transfer of the trust income to his lineal descendants, without regard to whether they were adopted, as opposed to his collateral descendants. Since the purpose of the trust was to provide for settlor's children and grandchildren, the contested phrase may have been included to prevent diversion of trust income to the spouses and relatives of his children or grandchildren.

498 Pa. at 150, 445 A.2d at 494. Appellees have not advanced any reasonable basis for attributing to settlor the intent to abandon this scheme of equal distribution among his children's lines which he established to govern the initial distribution of trust income to his children. *Id.,* 498 Pa. at 151, 445 A.2d at 495. Thus, to interpret "issue of the blood" to exclude adopted descendants from the trust and thereby restrict the class of beneficiaries eligible to receive trust income to the line of one of settlor's children would be to impute an element of arbitrariness to settlor's otherwise evenhanded and methodical scheme of distribution. *Id.,* 498 Pa. at 152, 445 A.2d at 495. Our interpretation of a trust instrument, which methodically and painstakingly provides for equality of distribution to settlor's children and their lines, avoids this disfavored result.

Further, settlor's scheme of distribution does not confer special benefits on children who have biological offspring to the exclusion of those children who do not have biological offspring or remain childless. When settlor created the trust, his daughter Helen had already given birth to three children. Settlor's scheme of distribution, however, provides equally for his four children and does not reveal that he bore any special affection for Helen because she had biological offspring. *See, Sykes* 477 Pa. at 259, 383 A.2d at 922. Nowhere in the Trust Agreement does settlor demonstrate any intent to disadvantage those descendants whose parents chose adoption in order to increase the biological descendants' shares of trust income. *Bashore* 498 Pa. at 152, 445 A.2d at 495. In these circumstances, we cannot say that the scheme of distribution shows with reasonable certainty settlor's intent to exclude adopted descendants by the term "lawful issue of the blood."

Nor do the facts and circumstances surrounding the execution of the trust reveal settlor's intent. Initially, we note that the trust is for the benefit of settlor's children and their descendants, but is silent as to the eligibility of adopted descendants. When settlor created the trust in 1926, settlor's sons were at or approaching middle age and

were still childless. Settlor lived three additional years after he created the trust and during this time his sons remained childless. Settlor made no amendment to the trust with respect to the issue of adopted heirs during the three years before his death. Thus, where facts and circumstances show that settlor established a trust for the benefit of his descendants and at the creation of the trust, settlor's sons were middle aged and childless, settlor's failure to specifically provide for adopted descendants does not conclusively indicate an intent to exclude them or to foreclose their eligibility to receive trust distributions.

Alternatively, the facts and circumstances surrounding the execution of the trust show that settlor had no adopted children in his family and that none of settlor's children had yet adopted children of their own. There is no evidence that settlor knew whether or not his three sons were infertile. *See Sykes* 477 Pa. at 259–60, 383 A.2d at 922. Settlor had no reason to believe his children would not bear children of their own or would adopt after his death. Viewed in this light, the facts and circumstances surrounding the execution of the trust show it is equally plausible that settlor gave no thought to whether some of his descendants would be adopted. *See Estate of Flinn*, 479 Pa. 312, 319–20, 388 A.2d 672, 677 (1978). Thus, efforts to discern settlor's intent from a facts and circumstances analysis are fruitless.

■ Because we find the Trust Agreement does not disclose with reasonable certainty the settlor's intent with regard to adopted children, we apply the canon of construction, announced in *Estate of Tafel* and presume settlor intended to include adopted descendants as well as biological descendants under the designation "lawful issue of the blood." *Estate of Tafel*, 449 Pa. 442, 296 A.2d 797 (1972). This canon of construction "attributes a reasonable intent to [a] settlor, whose trust instrument indicates no clear intent with regard to adopted children." *Bashore* 498 Pa. at 154, 445 A.2d at 496. This presumption also avoids the disfavored result of relegating Cyrus D. Jones' adopted

descendants to second-class status. *Sykes* 477 Pa. at 262, 383 A.2d at 924. Moreover, the presumption "recognizes in the law the well-established fact that most people regard adopted children as much a part of the family as are natural children." *Sykes*, 477 Pa. at 263, 383 A.2d at 924. Thus, we find the Orphans' Court erred in concluding that settlor intended to exclude adopted descendants from distribution of trust income.

Decree reversed. We relinquish jurisdiction.