HOBART W. SPRING & another, executors, *vs.* MICHAEL LONIGRO & others.

Middlesex.    April 15, 1977. — February 28, 1978.

Present: HALE, C.J., GOODMAN, & BROWN, JJ.

*Personal Property*, Tangible personalty, Stamp collection. *Devise and Legacy*, Tangible personalty, Stamp collection. *Words*, "Tangible personal property."

Under a provision in a will bequeathing to a legatee his "choice of any three (3) items of tangible personal property," the legatee was entitled to select a stamp collection. [69–72]

CIVIL ACTION commenced in the Probate Court for the county of Middlesex on December 27, 1974.

The case was heard by *Freedman, J.*

*William F. Kehoe* for Hobart W. Spring & another, executors.

*Thomas H. Dowd, Jr.*, for Hobart W. Spring & others, trustees.

*Carol Fubini*, Assistant Attorney General, for the Attorney General.

*David O. Burbank* for Michael Lonigro.

fied that he had been in the lounge "hundreds of times" pursuant to his duties as a vice control officer.

GOODMAN, J. This is an action for instructions and declaratory relief by Hobart W. Spring and Mildred Joyce, executors of the will of Blanche E. Marston; the defendants are Michael Lonigro, the Attorney General, and the trustees of The John P. Marston Foundation, Hobart W. Spring, Mildred Joyce, and the Boston Safe Deposit and Trust Company. The Foundation is the residuary legatee. The probate judge held, on an agreed statement of facts, that Lonigro was entitled to select a stamp collection under Article Second of the will, which bequeathed, "6. To said[1] MICHAEL LONIGRO . . .

a. The pool table on the third floor and

b. His choice of any three (3) items of tangible personal property not otherwise specifically given hereunder." The residuary legatee and the Attorney General appealed.

Article Second contains seven paragraphs, the first six of which make gifts to named individuals. These gifts, set out in thirteen subparagraphs, include various pieces of antique furniture, furnishings, jewelry, "my silver set marked 'BEE', presently on my bureau" and "[a]ll of my silver not otherwise given." The last paragraph of Article Second (immediately following paragraph 6, the bequest to Lonigro) provides, "Any tangible personal property not otherwise disposed of, exclusive of cash, bank deposits, securities and the like, shall be sold by my executors and the proceeds of such sale shall be disposed of as part of the remainder of my estate."

The Attorney General and the residuary legatee contend that the gifts in that article should be limited to "household and personal effects" which, they argue, would not include a stamp collection. We disagree; the items which Lonigro is allowed to choose are characterized as "tangible personal property," a much broader

---

[1] He received a pecuniary bequest of $3,000 by Article First, which made such bequests ranging from $1,000 to $5,000 to thirty-two individuals.

category. It comprehends "personal property, palpable, susceptible to the sense of touch, capable of ownership, and endowed with intrinsic value." *Pagliarulo* v. *National Shawmut Bank,* 353 Mass. 449, 450 (1968). See *Gaston* v. *Gaston,* 320 Mass. 627, 628 (1947). The intent of the article as a whole is to dispose of all the testatrix's "tangible personal property." It differentiates such property only from "cash, bank deposits, securities and the like." A stamp collection obviously does not fall within the latter category.

The intent of the testatrix to dispose of all her tangible personal property in Article Second is indicated in the general plan of the will. *Fitts* v. *Powell,* 307 Mass. 449, 454 (1940). *Poor* v. *Hodge,* 311 Mass. 312, 315 (1942). In Article First and Article Third the will makes pecuniary bequests to individuals (see fn.1) and to charities respectively; it deals with all the tangible personal property in Article Second providing that what remains after Lonigro's choices should be sold by the two individual executors who would then transfer the proceeds to the three trustees of the Foundation. It was thus to receive the entire residue of the estate in "cash, bank deposits, securities and the like." Compare *Austin* v. *Austin Natl. Bank,* 488 S.W. 2d 586, 591 (Ct. App. Tex. 1972).

Since we find controlling the testatrix's use of the phrase "tangible personal property," the meaning of which is clear, we need not decide (and we do not intimate our views) whether the specific bequests in the first five paragraphs of Article Second can be described as a class of "household and personal effects" of which the stamp collection might be a member. This is not an altogether simple question, and the cases in other jurisdictions have reached differing results. Compare *Matter of Gano,* 203 Misc. 718, 722 (N.Y. Sur. Ct. 1952), *In re Gault's Estate,* 48 N.Y.S.2d 928, 929 (Sur. Ct. 1944), and *Matter of Minniss,* 200 Misc. 353, 354 (N.Y. Sur. Ct. 1951), with *In re Laidlaw's Estate,* 36 N.Y.S.2d 971, 972 (Sur. Ct. 1942), *Matter of Woerwag,* 207 Misc. 933, 933–934 (N.Y. Sur. Ct.

1955), and *In re Armour*, 27 N.J. Super. 345, 347 (1953). See *Estate of Johnson*, 5 Cal. App. 3d 173, 182 (1970).

The Attorney General and the residuary legatee contend that even if the stamps are considered tangible personal property, the collection does not constitute an "item [ ] of tangible personal property." The implication of that contention is that each individual stamp is to be treated as a separate item. We think not. The agreed statement of facts states: "The Testatrix's stamp collection consists of tens of thousands of loose and mounted individual stamps from the United States and various foreign countries, plus numerous postcards, cancelled covers, mint blocks, and sheets of stamps. Said collection includes not only postage stamps but also miscellaneous other types of stamps such as documentary stamps, revenue stamps, war ration stamps and broadcasting station stamps. At present said collection is contained in ten individual albums, one folder, six boxes and eighteen manila envelopes." An expert in philately examined the stamps and concluded that the testatrix (as quoted by the probate judge in his findings) "collected and accumulated every stamp that came her way. She did not attempt to form a specialized collection of any one country or issue but rather was a general collector."

Given the nature of the collection and the comprehensive purpose of Article Second, we agree with the probate judge's conclusion "that the testatrix considered her stamp collection as a single unit for the purpose of a legacy in her will. In the alternative, she would have had to consider it as representing tens of thousands of units and this latter supposition does not seem logical." The testatrix would indeed have thought of a single stamp as an item of the collection; but in terms of the disposition in Article Second of all her tangible personal property the stamp collection would more naturally appear to her as a unit. See *Old Colony Trust Co.* v. *Attorney Gen.*, 316 Mass. 530 (1944), in which the court found the testator's intent to have been to treat a collection of silver as having

a "unitary character" (at 531) and thus to include pieces in the Museum of Fine Arts, though the collection was described as "whether at my said residence in Newton or on loan to said Smithsonian Institution" (at 531).

Our conclusion finds support in the testatrix's pecuniary gift in Article First made to a legatee "in appreciation of his interest in my tape measure collection." As the probate judge observed, "Here testatrix regarded all her tape measures as representing her collection which in this context might well be assumed to be one unit or item." Further, the result does not disrupt the testatrix's general testamentary plan. The value of the stamp collection—appraised at $10,890—is less than the bequest in Article Second to another legatee of "all of my silver not otherwise given," which is appraised at $15,373; and some of the other legatees received items of substantial value. Further, the residuary gift to the Foundation is not significantly impaired, for it will still approach one million dollars; and the testatrix's intent to provide amply for the Foundation is thus not thwarted. Compare *In re Estate of Wiley*, 331 A.2d 343, 346 (D.C. 1975). See also *In re Estate of Bloomingdale*, 142 N.Y.S.2d 781 (Sur. Ct. 1955).

*Judgment affirmed.*