459 A.2d 1289

**In re ESTATE OF Jesse F. MACFARLANE a/k/a Jesse Fletcher Macfarlane, Deceased.**

**Appeal of Malcolm MACFARLANE, Elizabeth Macfarlane and Louise Macfarlane Walthour.**

Superior Court of Pennsylvania.

Argued June 15, 1982.

Filed May 6, 1983.

398

Thomas F. Nelson, Pittsburgh, for appellants.

John D. Truxall, Pittsburgh, for Pgh. Nat. Bank, participating party.

David Max Baer, Pittsburgh, for Noble, participating party.

Malcolm F. Macfarlane, Pittsburgh, participating party, in pro. per.

Before BROSKY, JOHNSON and MONTGOMERY, JJ.

JOHNSON, Judge:

The instant appeal involves the interpretation of a provision in the will of the deceased testator, Jesse F. Macfarlane. The testator died on December 11, 1979 leaving a valid will dated October 2, 1979 which was duly admitted to probate.

The will provisions relevant to this appeal state:

FIRST: A. I give all my tangible personal property, together with any existing insurance thereon, to my wife, ELIZABETH P. MACFARLANE, or if she does not survive me, I give such items of my tangible personal property to the following named individuals who are then living. [Followed by nine numbered subparagraphs containing directions for the disposition of specific items and a tenth subparagraph disposing of the balance of testator's tangible personal property to appellants.]

. . . .

SECOND: I give the residue of my estate to PITTS-BURGH NATIONAL BANK, as trustee, to hold under the terms of my trust agreement dated October 2, 1979, ... or if such agreement is not in effect at the time of my death, to hold in trust under the terms specified in such agreement on the date of this will. . . .

The trust agreement referred to established a marital and a residuary trust for the benefit of testator's wife, Elizabeth P., during her lifetime. Upon her death, the trusts were to be divided into three separate trusts for the benefit

of testator's brother Malcolm, his sister Elizabeth and his niece Louise Macfarlane Walthour, individually.

Testator's wife died two months after testator, accelerating the secondary life estates in the individual trusts. These secondary trust beneficiaries, appellants in the instant case, challenge the ruling by the trial court that certain gold and silver coins, owned by the testator at the time of his death, constitute tangible personal property and therefore pass under Article FIRST of testator's will, rather than pass to the trusts for testator's wife, as part of the residue of testator's estate.[1]

Appellants argue that the testator's intent was for the coins to pass to the trusts created for his wife and not directly to her through the provision FIRST of testator's will. They specifically argue that testator considered the coins to be an investment or cash, thus constituting intangible personal property. Appellants further support their argument by referring to evidence presented that (1) testator was concerned with providing for his wife who was in poor health and (2) testator failed to specifically mention the coins in his will, which enumerated numerous specific bequests of tangible personal property.

A hearing was held in the trial court and evidence presented by appellants to ascertain testator's intent concerning the disposition of the coins. The testimony presented the following facts:

Testator was not a numismatic collector of coins. He believed it prudent to accumulate gold and silver as a "hedge" against a collapsing economy and a failing dollar. Testator was interested in gold as an investment, as indicated by his alleged statement that "[y]ou have it in your hand and you feel well."[2] Testator was also concerned for his wife's poor health and inability to manage her affairs, hence the creation of the trust for her benefit. Testator,

1. The date of death value of the coins was appraised at $19,006.86, consisting of over 5000 individual coins.

2. Testator also held over $75,000 in gold stocks at his death.

prior to entering the hospital, told his sister Elizabeth that he had hidden silver coins in his home and also gave her his gold coins for safe keeping, with the provision that she not tell anyone of their existence. The scrivener of testator's will testified that he was unaware of testator's accumulation of coins and that testator never mentioned them in regard to the preparation of the will or the trusts.

From this testimony, appellants make four arguments: (1) that the trial court erred in narrowly interpreting testator's comprehension of the coins as tangible personal property, (2) that the facts and circumstances presented from the evidence demonstrate testator's intention to add his accumulation of coins to the trust, (3) that the doctrine of ejusdem generis compels the exclusion of the coins from the term "tangible personal property" and (4) that the lifting of the prohibition against holding gold has changed the character of gold coins held for investment purposes.

Initially, we must formulate our scope of review in will interpretation matters.

It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain[.]

*In re Burleigh's Estate*, 405 Pa. 373, 376, 175 A.2d 838, 839 (1961) (citations omitted). *See also Estate of Houston*, 491 Pa. 339, 421 A.2d 166 (1980).

■ An ambiguity in a will must be found without reliance on extrinsic evidence; extrinsic evidence is admissible only to resolve, not create, an ambiguity. *See In re Estate of Kelly*, 473 Pa. 48, 373 A.2d 744 (1977).

Furthermore, in construing a will, technical words must ordinarily be given their legal effect since it must be presumed that they were intentionally and intelligently employed. *In re Baldwin's Estate,* 377 Pa. 268, 105 A.2d 52 (1954). *See also In re Estate of Grier,* 403 Pa. 517, 170 A.2d 545 (1961). Therefore, it is not what the court thinks the testator might or would have said in the existing circumstances, or even what the court thinks he meant to say, but what is the meaning of his words. *In re Estate of Baker,* 495 Pa. 522, 434 A.2d 1213 (1981); *In re Beisgen's Estate,* 387 Pa. 425, 128 A.2d 52 (1956).

The issue turns on the testator's use in his will of the technical words "tangible personal property." In distinguishing tangible property from intangible property, it has been stated that:

Tangible property is that which may be felt or touched; property capable of being possessed or realized; ... that which is visible and corporeal; having substance and body as contrasted with incorporeal rights such as franchises, choses in action, copyrights, the circulation of a newspaper, annuities and the like.... Intangible property is property which has no intrinsic or marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises.

73 C.J.S. Property § 5 at p. 156 (1951) (footnotes omitted). *See also Spring v. Lonigro,* 6 Mass.App. 68, 372 N.E.2d 1309 (1978), *app. denied,* 375 Mass. 788 (1978).

Tangible *personal* property has been defined as "[p]roperty such as a chair or a watch which may be touched or felt in contrast to a contract." Black's Law Dictionary (5th ed. 1979).

We now turn to the first issue raised by appellants; that the trial court erred in narrowly interpreting testator's comprehension of the coins as tangible personal property.

Appellants argue that this narrow interpretation of testator's intent concerning his use of the phrase "tangible personal property" in effect defeats what they believe to be

testator's true intent. However, as stated in *Battles' Estate*, 379 Pa. 140, 143–44, 108 A.2d 688, 690 (1954):

> [T]his Court has consistently decided that in construing a will, it is not what testator may have meant but the meaning of the language used ... The intention of the testator, however, must be determined from what appears *upon the face of the will.* Extrinsic evidence of surrounding facts must only relate to the meaning of *ambiguous* words of the will. It cannot be received as evidence of testator's intention independent of the written words employed.

(emphasis in original; citations omitted).

■ Therefore, only if the language of testator's will is ambiguous on its face, may the court look to evidence outside of the will for assistance in interpretation. *Battles' Estate, supra.*

■ Upon an analysis of the four corners of testator's will, we discern no ambiguity. The will utilizes the technical words "tangible personal property," which words have a specific legal definition, as previously set forth. The gold and silver coins clearly are tangible property,[3] in that they can be felt or touched. Also, because the coins have both intrinsic and marketable value in and of themselves, they cannot be considered intangible property, without more. The coins are more than the mere representation or evidence of value, as opposed to stock certificates or paper currency. *See Lawson Estate,* 28 D & C 2d 642 (Phila.Co. 1962) (coin collection passes through provision of will regarding tangible personal property; coin collection is not cash).

Therefore, as the language of testator's will is not ambiguous on its face, no oral testimony can be used to prove testator's intent. We hold that the trial court was correct in narrowly determining whether the coins were tangible personal property, without regard to the evidence presented by appellants regarding the testator's alleged intent. Our

---

**3.** Appellants do not argue that the coins were not testator's *personal* property.

404

holding on appellants' first issue also settles the second issue as being without merit.

The third issue concerns the application of the ejusdem generis rule of construction to the instant case.

Appellants refer us to testator's specific disposition of various items of his personal property in the event that testator's wife fails to survive him. Appellants then note that the coins are specifically not mentioned in any of those provisions. Appellants would have this court apply the ejusdem generis rule of construction which states that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. Black's Law Dictionary (5th ed. 1979). *See also In re Beisgen's Estate, supra.* However, this rule of construction is inapplicable to the instant case, as the will is not ambiguous. *See In re Burleigh's Estate, supra.*

Finally, we find no merit in appellants' final argument concerning the lifting of the prohibition against holding gold coins as an investment.

The order of December 8, 1981 is affirmed.