## In re Estate of Ramer

C.P. of Adams County, no. OC-75-94.

*D. Lloyd Reichard II,* for personal representatives.
*Lucy E. Kniseley,* for heir, David Shupe.

KUHN, *J.,* May 1, 1995—Well-known local photographer, P. Ross Ramer, died on February 12, 1994, leaving a holographic will dated April 4, 1992. At issue presently is the interpretation of paragraph Eleventh(b)(2) of said will. That provision reads:

"ELEVENTH: All the rest, residue and remainder of my estate of whatever nature and wherever situated is to be placed in a trust administered by the Adams County National Bank, with its trust office in the Borough of Gettysburg, Pennsylvania, its successor or successors, and Doris R. Large of Waynesboro, PA. I hereby give the trustees the power to sale (sic) my properties as necessary to to (sic) for the above personal bequests as well as to enhance income for the trust provided the proceeds are invested in U.S. Government five to 30 years notes or bonds, investment grade corporate bonds or blue chip stocks. The principal of the trust shall remain intact. The trustees shall receive the standard fees for their services.
. . .

"(b) Following the death of Doris R. Large, the income from the above trust shall be distributed has (sic) follows:
. . .

"(2) 75 percent of the trust income shall be distributed for legitimate educational assistance to my surviving relatives on the basis of need."

The personal representatives of decedent's estate, the trustees of the residuary trust together with decedent's intestate heirs, petitioners, have agreed to a stipulation relative to the ultimate disposition of the funds passing under said paragraph Eleventh(b)(2). That stipulation provides that upon the death of Doris R. Large, 75 percent of the then existing trust principal would be distributed outright to the issue of decedent's parents who are living at the death of Doris R. Large, per stirpes. The stipulation makes no provision for the issue of decedent's grandparents (other than the issue of decedent's parents) and approximately 15 of these persons, for themselves or on behalf of their issue, objectors, object to the stipulation.

The specific issue is the meaning of the term "my surviving relatives" in paragraph Eleventh(b)(2). Petitioners contend they represent the entire class of persons who are "surviving relatives" whereas objectors argue that the class is more expansive.

It is a cardinal rule that in interpreting a will it must be construed according to the intent of the testator, *Estate of Sellers,* 344 Pa. Super. 538, 541, 496 A.2d 1237, 1238 (1985), as of the date of execution of the will. *Id.* at 544, 496 A.2d at 1240. The testator's intent is gathered from a consideration of the precise language contained within the four corners of the will, the scheme of distribution, the circumstances surrounding the execution of

the will and other facts bearing on intent. *Estate of Houston,* 491 Pa. 339, 344, 421 A.2d 166, 169 (1980); *In re Estate of Macfarlane,* 313 Pa. Super. 397, 401, 459 A.2d 1289, 1291 (1983). Only if the will is ambiguous or conflicting or the testator's intent does not appear with reasonable certainty will the courts resort to canons of construction to assist in determining intent. *Houston, supra* at 344, 421 A.2d at 169; *In re Estate of Wainwright,* 417 Pa. Super. 335, 338, 612 A.2d 509, 511 (1992); *Estate of Sykes,* 477 Pa. 254, 257, 383 A.2d 920, 921 (1978).

If extrinsic evidence is offered it must only relate to the meaning of ambiguous words in the will and cannot be received as evidence of the testator's intent independent of the express words used. *In re Estate of Baker,* 495 Pa. 522, 526, 434 A.2d 1213, 1215 (1981). In other words, an ambiguity must be found without reliance on extrinsic evidence and extrinsic evidence is only used to resolve, not to create, ambiguities. *Macfarlane, supra* at 401, 459 A.2d at 1291.

Unfortunately, decedent did not clarify what he intended by the phrase "my surviving relatives." This is in sharp contrast to other parts of the will where he specifically identified who fit within a particular class of beneficiaries. In paragraph Sixth he bequeathed $1,000 "apiece to my first cousins herein named" and identified six individuals.[1] In paragraph Seventh he bequeathed $1,000 "to my second cousin, Steve Hemler . . . ."[2] In paragraph Eighth he bequeathed $500 "apiece to my closest second cousins herein named" and identified 15 individuals.[3] In paragraph Ninth he bequeathed

---

1. Four of these six are objectors.
2. Mr. Hemler is one of the objectors.
3. Ten of these 15 are objectors.

$1,000 "apiece to my nieces and nephews" and named 14 persons. In paragraph Tenth he bequeathed certain sums "to my sisters" specifically naming four persons. Decedent did not, however, limit the class of "surviving relatives" by expressly naming persons as he did earlier in the will or by specifically incorporating those persons named in paragraphs Sixth through Tenth. The court must, therefore, look for assistance in ascertaining decedent's intent.

In order to clarify the interpretation of testamentary documents the Pennsylvania legislature enacted 20 Pa.C.S. §2514 entitled "Rules of Interpretation." *In re Estate of Dex,* 408 Pa. Super. 391, 395, 596 A.2d 1143, 1145 (1991). The preamble of that section and a relevant subsection provide, in pertinent part:

"In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules . . . .

"(4) Meaning of 'heirs' and 'next of kin,' etc.; time of ascertaining class. A . . . bequest of . . . personal estate, whether directly or in trust, to the testator's . . . 'relatives' . . . shall mean those persons including the spouse, who would take under the intestate laws if the testator . . . were to die intestate at the time when such class is to be ascertained . . . ."

Section 2514 creates a statutory presumption which must be applied when construing testamentary language unless the testator has expressed a contrary intent within his will. *Id.* at 397, 596 A.2d at 1146. Thus, the statute provides that wills must be construed in accordance with the rules set forth therein unless a contrary intent appears in the will. A contrary intent can be express or implied from other aspects of the will. *Sellers, supra* at 543,

496 A.2d at 1239. Generally, however, the intention of the testator to render the statute inoperative must be plainly indicated or shown with reasonable certainty. Here, the burden would be on respondents to demonstrate that contrary intent. *Dex, supra* at 397, 596 A.2d at 1146.

While our resolution may or may not reap a result intended by decedent, the law appears to clearly support petitioners' position. There is nothing in decedent's will which expressly or by necessary implication indicates plainly or with reasonable certainty that decedent intended to disregard section 2514(4). Despite the fact that decedent styled his own will it is clear that he was careful to identify persons fitting within a particular class. Without indicating in some fashion that the term "relatives" was to be more expansive than provided for in section 2514(4) we must presume that he intentionally and intelligently intended to give that technical term its legal meaning and effect. *Macfarlane, supra* at 402, 459 A.2d at 1291. Thus, objectors have not been able to satisfy their burden.

Therefore, there being no ambiguity, the court is not authorized to receive any extrinsic evidence which might suggest that decedent intended a meaning for "relatives" different than that set forth in section 2514(4).

Accordingly, the attached order is entered.

## ORDER

And now, May 1, 1995, in consideration of the petition for rule to show cause why stipulation should not be accepted filed February 10, 1995, and the petition for review filed with the court at hearing on March 27, 1995, it is hereby ordered and decreed that the proposed stipulation is approved and will be accepted upon filing of the original executed by all intestate heirs of the decedent.