John G. Myers,                :
        Petitioner       :
                       :
     v.                :
                       :
Commonwealth of Pennsylvania,  :   No. 274 F.R. 2016
        Respondent     :
                       :
Cecelia A. Reihl,          :
        Petitioner       :
                       :
     v.                :
                       :
Commonwealth of Pennsylvania,  :   No. 275 F.R. 2016
        Respondent     :   Argued: November 12, 2019

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: May 11, 2020

John G. Myers (Myers) and Cecelia A. Reihl (Reihl) (collectively, Taxpayers) petition this Court seeking review of the orders of the Board of Finance and Revenue (Board) each dated March 30, 2016 denying their requests for refunds of sales tax paid on purchases in transactions using coupons at BJ's Wholesale Club, Inc. (BJ's). The Board denied Taxpayers' petitions because BJ's acceptance of the coupons did not establish a new purchase price which would entitle Taxpayers to a reduction in sales tax and a refund pursuant to the Tax Reform Code of 1971 (Tax

Code).[1]  Upon review, we reverse the Board's order relating to Taxpayer Myers' transactions and affirm the Board's order relating to Taxpayer Reihl's transaction.

The parties stipulated to the following facts.[2]  On June 24, 2015, Taxpayers filed petitions with the Pennsylvania Department of Revenue's (Revenue) Board of Appeals (BOA) requesting refunds of sales tax paid on purchases made at BJ's with coupons.  Stipulations of Fact (Stip.) ¶ 5, Exhibits (Ex.) P & Q.  Taxpayers made purchases of "tangible personal property" at a BJ's location in Downingtown, Pennsylvania, using coupons on June 25, 2012, June 13, 2013, August 22, 2014, and August 25, 2014.  Stip. ¶¶ 15-18.  Taxpayers asserted that they paid sales tax on the full purchase price of the tangible personal property, rather than the reduced priced resulting from presentation of the coupons, and sought a refund for excess sales tax paid.  Stip. Ex. P Petition ¶ 6 & Ex. Q Petition ¶ 6.  Taxpayer Reihl sought a refund of 12 cents for the sales tax paid to complete the June 25th transaction,  Stip. ¶ 15c, and Taxpayer Myers sought a refund of 14 cents, 18 cents and 6 cents (totaling 38 cents) for the sales tax paid to complete the June 13th, August 22nd, and August 25th transactions, respectively.  *Id*. ¶¶ 16c, 17c & 18c.[3]  In support of their request,

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.  Several provisions of the Tax Code were amended by the Act of June 28, 2019, P.L. 50, No. 13 effective July 1, 2019 but the amendments to the Tax Code have no bearing on the present matter.

[2] The stipulation of facts is binding and conclusive upon this Court though we may draw our own legal conclusions from those facts.  *Norris v. Commonwealth*, 625 A.2d 179, 182 (Pa. Cmwlth. 1993).

[3] Additionally, before the BOA, Taxpayer Reihl sought a refund for sales tax paid to complete a transaction on February 11, 2012.  Stip. Ex. Q ¶ 12.  Though Taxpayer Reihl mentioned the February 11th transaction in the Petition for Review filed with this Court, Petition for Review ¶ 8, it is not included in the Stipulation of Facts prepared by the parties summarizing the transactions at issue.  *See* Stip. ¶¶ 15-18.  *Cooper v. Commonwealth*, 700 A.2d 553, 554 (Pa. Cmwlth. 1997) (explaining that the facts not included in the stipulation of facts are not facts of record).  Therefore, the February 11th transaction is not a transaction at issue before this Court.

2

Taxpayers presented copies of the receipts from BJ's, copies of coupons, and copies of purchase history reports from BJ's covering the period of January 1, 2010 through July 17, 2012. Stip. Exs. P & Q.[4]

After a hearing on the matter, BOA denied Taxpayers' requests for refunds concluding that the sales tax was due on the original full purchase price of the items purchased. BOA Decision and Orders mailed 9/1/15 at 2; Stip. Exs. L & M. In rendering its decision, BOA relied on a regulation promulgated by Revenue at 61 Pa. Code § 33.2(b)(2) that allows amounts represented by coupons to establish a reduced purchase price if "both the [taxable] item and the coupon are described on the invoice or cash register tape." *Id*. at 1. BOA explained that "per the receipts presented, the coupons are not adequately described and there is nothing that indicates to which item the coupon relates . . . ." *Id*. at 2. Therefore, BOA concluded that acceptance of the coupons by BJ's did not establish a new purchase price. *Id*.

Taxpayers filed petitions for review with the Board seeking reversal of BOA's decisions. The Board denied Taxpayers' petitions concluding that Taxpayers failed to establish that Revenue's regulation is "contrary" to the plain language of the Tax Code and affirmed BOA's conclusion that sales tax is due on the original purchase price of the items purchased because the coupons were not adequately described. Board Decision and Orders dated 3/30/16 at 4; Stip. Exs. N & O. Taxpayers petitioned this Court for review of the Board's decisions.[5] By order

---

[4] The purchase history reports are a summary of items purchased at BJ's by member number ending in "3339" between January 1, 2010 and July 17, 2012. Stip. Ex. P, Ex. 4 & Stip. Ex. Q, Ex. 3.

[5] This Court reviews *de novo* the determinations of the Board. *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997). Although cases from the Board are addressed to our appellate jurisdiction, we function as a trial court. *Cooper*, 700 A.2d at 554 n.1.

dated June 16, 2016, this Court granted BJ's petition to intervene in this matter. Cmwlth. Order dated 6/16/16.

## *Arguments*

Before this Court, Taxpayers contend that the Board erred by denying their refund requests because Revenue's regulation is unenforceable as it was promulgated in violation of the plain language of Section 201(g)(1)-(2) of the Tax Code, 72 P.S. § 7201(g)(1)-(2). Taxpayers' Brief at 19-20. Taxpayers argue that they presented coupons to BJ's in exchange for taxable items, which entitled them to a reduced purchase price based on the plain language of Section 201(g)(2) of the Tax Code, which allows a deduction from the purchase price the value of any tangible personal property taken in trade or in exchange of any part of the purchase price. *Id*. at 15-18; 72 P.S. § 7201(g)(2).

To support their argument, Taxpayers rely on the definition of "tangible personal property" as "[c]orporeal personal property including, but not limited to, goods, wares, merchandise. . . ." Section 201(m)(1) of the Tax Code, 72 P.S. § 7201(m). Corporeal personal property has a "physical material existence" and is "tangible." *Dechert LLP v. Commonwealth*, 998 A.2d 575, 580 (Pa. 2010). "Personal property" is "any movable or intangible thing that is subject to ownership and not classified as real property." *Air-Serv Grp., LLP v. Commonwealth*, 18 A.3d 448, 453 (Pa. Cmwlth. 2011). Relying on this precedent, Taxpayers assert that a coupon is "tangible personal property," because "[o]ne can hold a coupon; one can possess it; one can trade it; it commonly has a value printed on its face in a fraction of a cent; it has the kind of physical form one associates with corporeality and tangibility; and it is not real property." Taxpayers' Brief at 17.

4

Taxpayers further argue that Revenue's regulation is problematic because it creates a requirement not present in Section 201(g)(1)-(2) of the Tax Code that to receive a reduced purchase price, there must be a "*detailed* description of the item and coupon" on the invoice or cash register tape created by the vendor during the transaction. Taxpayers' Brief at 20 (emphasis in original). By imposing this description requirement, Taxpayers contend that the regulation denies them a benefit to which they are entitled, that is, that sales tax be collected on the "discounted, post-coupon price of each purchase" and allows vendors to overcharge sales tax on Pennsylvania consumers. *Id*. at 19-21.

Moreover, assuming that Revenue's regulation is valid, Taxpayers contend that they provided sufficient evidence of compliance with the description requirement of the regulation. Taxpayers assert that BJ's maintains purchase history reports that contain information describing the coupons and items sufficiently to link the two as required by the regulation. Taxpayers' Brief at 22-23. Taxpayers contend that the Board erred when it refused to consider the purchase history reports and "instead" ruled that "because BJ's purposely obscures this link on the actual register tapes it would not enforce the law." *Id*. at 11. Further, Taxpayers submit that they presented evidence of two transactions that involved only one coupon and one taxable item and, therefore, it is evident as to what item the coupon applied thereby rendering it impossible not to comply with the description requirement. *Id*. at 24.

The Commonwealth counters that Taxpayers failed to meet their burden of demonstrating that Revenue's regulation is "clearly inconsistent" with Section 201(g)(1)-(2) of the Tax Code. Commonwealth's Brief at 32-33. The Commonwealth argues that Revenue's regulation was promulgated pursuant to Revenue's enforcement authority provided in the Tax Code and Revenue is entitled

to deference in its interpretation of the Tax Code. *Id*. The Commonwealth explains that the regulation addresses how coupons affect the purchase price of taxable items and provides that coupons may establish a reduced purchase price if Taxpayers present the evidence required by the regulation. *Id*. at 19-20. The Commonwealth asserts that Taxpayers "elected to rely exclusively on the receipts attached to the parties' stipulation of facts" as the basis for their requests before this Court. *Id*. at 21-22. The Commonwealth explains that the receipts of the transactions fail to meet the description requirement of the regulation, that is, the receipts fail to identify the items and the coupons with sufficient specificity to allow a reduction of the purchase price. *Id*. at 21. The Commonwealth argues that the description requirement in the regulation is to enable Revenue to "fulfill its legislative mandate of ensuring compliance with the Tax Code" by requiring objective documentation created at the time of the transaction to allow for a reduced purchase price upon the presentation of coupons. *Id*. at 20.

Though Taxpayers argue that coupons are tangible personal property entitling them to a reduced purchase price, the Commonwealth explains that the issue is not "as straightforward" as presented by Taxpayers. Commonwealth's Brief at 30-31. Assuming that coupons are tangible personal property, the Commonwealth contends that Taxpayers produced no evidence that they used "paper coupons" nor did they develop evidence of the nature, types or terms of the coupons to support their assertion that they were "tangible personal property taken in lieu of the whole or part of the purchase price" to entitle them to a reduced purchase price per Section 201(g)(2) of the Tax Code. *Id*. at 31. Therefore, the Commonwealth seeks an order denying Taxpayers' petitions. *Id*. at 33.

6

Intervenor BJ's agrees with the Commonwealth that Revenue's regulation is consistent with the Tax Code. BJ's asserts that Taxpayers' reliance on Section 201(g)(2) is in error because coupons are not tangible personal property. BJ's' Brief at 18. BJ's asserts that the Tax Code imposes sales tax on the purchase price of taxable items, referred to as tangible personal property, and coupons are not taxable items. *Id.* BJ's contends that Revenue's regulation explains the circumstances under which the use of a coupon may establish a new purchase price and contends it complied with Revenue's regulation and appropriately taxed the full purchase price of the items purchased by Taxpayers at retail because the receipts do not "specifically describe the coupons nor link them to any specific items." *Id.* at 17.

## *Analysis*

Initially, we observe that Section 270(a) of the Tax Code grants Revenue broad authority to enforce Article II[6] of the Tax Code relating to taxes for education, which include sales tax. 72 P.S. § 7270(a). Section 270(a) provides that Revenue is:

> authorized and empowered to prescribe, adopt, promulgate and enforce, rules and regulations not inconsistent with the provisions of this article, relating to any matter or thing pertaining to the administration and enforcement of the provisions of this article, and the collection of taxes, penalties and interest imposed by this article. . . .

72 P.S. § 7270(a). Thus, Revenue has the authority to adopt regulations that are "not inconsistent with the provisions" of Article II and that relate to the enforcement and the collection of sales tax. *Id.*

---

[6] *See* Sections 201-282 of the Tax Code, 72 P.S. §§ 7201-7282.

7

An agency exceeds its legislative rulemaking powers when regulations are "so entirely at odds with fundamental principles as to be the expressions of a whim, rather than an exercise of judgment." *Quest Diagnostics Venture, LLC v. Commonwealth of Pennsylvania*, 119 A.3d 406, 413 (Pa. Cmwlth. 2015). Upon review of the plain language of the Tax Code and 61 Pa. Code § 33.2(b)(2), we conclude that the regulation is not inconsistent with the Tax Code as asserted by Taxpayers.

Section 202(a) of the Tax Code provides:

> There is hereby imposed upon *each separate sale at retail of tangible personal property . . . as defined herein*, within this Commonwealth a tax of six per cent *of the purchase price*, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

72 P.S. § 7202(a) (emphasis added). The term "purchase price" is defined by Section 201(g)(1)-(2) of the Tax Code, in pertinent part,[7] as follows:

> (1) The total value of anything paid or delivered, or promised to be paid or delivered, whether it be money or otherwise, in complete performance of a sale at retail or purchase at retail, as herein defined, *without any deduction on account of* the cost or value of the property sold, cost or value of transportation, cost or value of labor or service, interest or *discount paid or allowed after the sale is consummated*, any other taxes imposed by the Commonwealth of Pennsylvania or any other expense except that there shall be excluded any

---

[7] The term "purchase price" is defined in Section 201(g) of the Tax Code and includes eight subparts, that is, Section 201(g)(1)-(8), 72 P.S. § 7201(g)(1)-(8). But, the parties focus their dispute on Section 201(g)(1)-(2) of the Tax Code and we, therefore, will focus our analysis on this part of the definition.

gratuity or separately stated deposit charge for returnable containers.

(2) *There shall be deducted from the purchase price the value of any tangible personal property actually taken in trade or exchange in lieu of the whole or any part of the purchase price.* For the purpose of this clause, the amount allowed by reason of tangible personal property actually taken in trade or exchange shall be considered the value of such property.

72 P.S. § 7201(g)(1)-(2) (emphasis added).

Section 201(g)(1) of the Tax Code squarely addresses Taxpayers' transactions. Section 201(g)(1) provides that the purchase price is the "total value of anything paid" to complete performance of a sale at retail. 72 P.S. § 7201(g)(1). Though a vendor can accept the value of "anything paid" to complete performance of a sale at retail, a vendor cannot take the deductions expressly enumerated in Section 201(g)(1). *Id.* Of relevance here, a vendor cannot take any deduction on account of the "discount paid or allowed *after* the sale is consummated." *Id.* (emphasis added). However, as reflected on the receipts, Taxpayers presented coupons to BJ's for a discount *prior to* consummation of the sales. By presenting the coupons as value *prior to* consummation of the sales, Taxpayers sought a reduced purchase price. While the statute does not directly address discounts taken prior to the consummation of the sale, Revenue's regulation does.

Revenue's regulation provides, in pertinent part:

(b) *Exclusions*. Amounts which are excluded from the taxable portion of purchase price, *if separately stated and identified*, include:
(1) *Returnable containers*. Deposit charges for returnable containers.

9

(2) *Discounts*. Amounts representing on-the-spot cash discounts, employe discounts, volume discounts, store discounts such as "buy one, get one free," wholesaler's or trade discounts, rebates and store or manufacturer's coupons shall establish *a new purchase price if both the item and the coupon are described on the invoice or cash register tape.* An amount representing a discount allowed for prompt payment of bills which is dependent upon an event occurring after the completion of the sale may not be deducted in computing the tax. A sale is completed when there is a transfer of ownership of the property or services to the purchaser. [Examples omitted.] . . . .

(3) *Trade-in or exchange.* The amount allowed by the vendor for the acceptance of tangible personal property taken in exchange at the time of sale.

(4) *Finance charges.* Reasonable interest or finance amounts charged to the purchaser.

(5) *Gratuity.* A voluntary payment by the purchaser or a reasonable mandatory charge by the vendor in lieu of the voluntary payment, which is billed to the purchaser for services rendered in connection with the purchase of food or beverages or hotel or motel accommodations.

61 Pa. Code § 33.2(b) (emphasis in original and added).  As expressly provided in subsection (b)(2), amounts excluded from the "taxable" portion of the purchase price include discounts or coupons "*described on the invoice or cash register tape.*"  *Id.* Pursuant to the regulation, a sale is consummated, or completed, when the property is transferred to the purchaser.  *Id.*  The invoice or cash register tape describes the sale that has been consummated, including the deduction for amounts excluded from the purchase price *prior* to the consummation of the sale.  Because the regulation addresses discounts taken *prior* to the consummation of the sale, it does not conflict with Section 201(g)(1) of the Tax Code, which addresses discounts taken *after* the sale is consummated.

10

As stated, for a purchaser to obtain the benefit of a new purchase price due to a coupon, the coupon must be separately stated and identified and appear on one of two types of records, an invoice or cash register receipt. 61 Pa. Code § 33.2(b)(2). An invoice documents how much consideration is owed by the purchaser to the vendor and a receipt documents how much consideration is paid by the purchaser to the vendor to consummate the sales transaction.[8] The invoice or receipt must describe both the item and the coupon for the purchaser to receive the new purchase price. By requiring the vendor to document the item purchased and the coupon accepted as part of the transaction, Revenue ensures that when a vendor renders a discount, it does so *prior to* consummation of the sales transaction, thereby avoiding any conflict with the plain language of Section 201(g)(1) of the Tax Code prohibiting deductions to the purchase price *after* the sale is consummated.

To further illustrate this point, Revenue provided examples in the regulation explaining how discounts work in various situations:

> (i) "A" purchases two hamburgers from "R" restaurant with a "buy one, get one free" coupon. The price of one hamburger is $1. "R" rings up $2 on the cash register. "R" *enters a credit in the cash register* for the amount of $1 resulting in an adjusted price of $1. The *acceptance of the coupon by "R" establishes a new purchase* price of $1 which is subject to 6¢ tax.
> (ii) "A" purchases 15 grocery items from "B" grocery. All of the items are exempt from tax except a bottle of soft

---

[8] An invoice is defined as "[a]n itemized list of goods . . . furnished by a seller to a buyer, usu. *specifying the price and terms of sale*; a bill of costs." Black's Law Dictionary at 991 (11th ed. 2019) (emphasis added). The "cash register tape" records the amounts provided by the purchaser to the vendor documenting the sales transaction. A cash register is an "[e]lectronic device used to calculate financial transactions" and has a "*printing device for receipts*." *See* Business Dictionary at http://www.businessdictionary.com/definition/cash-register.html (last visited 4/27/20) (emphasis added).

11

drink. The price of the soft drink is $1. "A" gives "B" a manufacturer's coupon having a face value of 50¢ for the soft drink. "B" totals the 15 items on the cash register including $1 for the bottle of soft drink. *None of the items are described or identified on the cash register tape.* "B" reduces the total sale by $1--double the amount of the coupon. *The coupon is not described or identified on the register tape.* Therefore, the *acceptance of the coupon by "B" does not establish a new purchase price.* The $1 purchase price of the soft drink is subject to 6¢ tax. The redemption of the coupon represents a refund which does not affect the purchase price of the soft drink.

(iii) "A" purchases a coffee pot from "C" department store. The price of the coffee pot is $30. "A" pays sales tax upon the purchase of the coffee pot in the amount of $1.80. *The sale includes a $10 manufacturer's mail-in-rebate form. "A" completes the form, mails it to the manufacturer and receives a $10 check from the manufacturer. The receipt of the rebate check by "A" does not establish a new purchase price of the coffee pot.* "C" properly collected sales tax in the amount of $1.80.

(iv) "A" *purchases and accepts delivery* of a load of lumber from "D" lumber company. "D" sends "A" a billing invoice which states "lumber--$1,000, sales tax--$60." The invoice also states "if invoice paid within 30 days, customer entitled to a 1% discount." "A" pays the invoice within 5 days. "A" is entitled to a discount of 1% of $1,000, but is required to pay the sales tax in the amount of $60 as *a new purchase price has not been established.*

61 Pa. Code § 33.2(b)(i)-(iv) (emphasis added).

As evidenced by the foregoing examples, the regulation requires the vendor to document discounts taken on taxable items on an invoice or receipt prior to consummation of the transaction. If the coupon is presented for an item but it is not discernable that the item is taxable, then the discount does not apply to lower the purchase price. *See* 61 Pa. Code § 33.2(b), Ex. (ii). If the coupon is accepted and action is required after the transaction is complete for the purchaser to receive the

12

value represented by the coupon, then the coupon is deemed a refund rather than a discount. *See* 61 Pa. Code § 33.2(b), Ex. (iii) & (iv). Example (iv) provides that if a purchaser receives and pays an invoice *after* receipt of the goods and receives a discount, the purchaser is not entitled to a new purchase price. This language is consistent with Section 201(g)(1), which provides that any "discount paid or allowed after the sale is consummated" does not reduce the purchase price. 72 P.S. § 7201(g)(1). Finally, if the item is taxable and the vendor, upon receipt of the coupon, credits the amount of the coupon during the sales transaction as reflected on the invoice or receipt then the discount applies and the purchaser gets the benefit of a lower purchase price. *See* 61 Pa. Code § 33.2, Ex. (i). The regulation provides the circumstances under which a discount may apply to reduce a purchase price as long as it is taken *prior to* the consummation of the sale and is not, then, in conflict with Tax Code Section 201(g)(1). Additionally, because the regulation relates directly to the collection of sales tax by governing what amounts are excluded from the purchase price, Revenue promulgated it in accordance with its broad enforcement authority as provided in Section 270(a) of the Tax Code, 72 P.S. § 7270(a).[9]

We further conclude that Taxpayers' argument that coupons are "tangible personal property" under the Tax Code, and, therefore, the purchase price

---

[9] By requiring the vendor to document a taxable item and a coupon on an invoice or receipt, the vendor is able to establish that it collected the appropriate amount of sales tax. This documentation allows Revenue to perform its enforcement function, which is to examine the vendor's records to ensure that the vendor collected the proper amount of sales tax required by Article II of the Tax Code. *See* Section 271(a) of the Tax Code, 72 P.S. § 7271(a) (providing that "[e]very person liable for any tax imposed by . . . [Article II], *or for the collection thereof, shall keep the records*" and comply with such rules and regulations as Revenue may, from time to time, prescribe regarding matters pertinent to his business); *see also* Section 272 of the Tax Code, 72 P.S. § 7272 (providing that Revenue is to "examine any person, under oath, concerning taxable sales or use by any taxpayer or concerning any other matter relating to the enforcement or administration" of Article II).

must be reduced by the value of such coupon in accordance with Section 201(g)(2), is without merit. Taxpayers' Brief at 15-18. As stated, Section 201(g)(2) provides that there: *"shall be deducted from the purchase price the value of any tangible personal property actually taken in trade or exchange in lieu of the whole or any part of the purchase price."* 72 P.S. § 7201(g)(2) (emphasis added). Notably, Section 201(g)(2) also provides: "[f]or the purpose of this clause, the amount allowed by reason of tangible personal property actually taken in trade or exchange shall be considered the value of such property." *Id.*

We observe that some coupons have a material existence and can be possessed in a physical form, and printed coupons "commonly [have] a value printed on [their] face in a fraction of a cent." Taxpayers' Brief at 17. However, the value of the coupon is not in its tangibility but, rather, in what it represents. A coupon represents value, that is, an amount to discount the tangible personal property for which it is presented during a sales transaction. *See State ex. rel. Clayburgh v. Am. W. Cmty. Promotions, Inc.*, 645 N.W.2d 196, 212 (N.D. 2002) (holding that coupon books are not subject to sales tax because the purpose in buying a coupon book is not to "obtain the book itself" but to "to obtain the right to receive discounts that are represented by the coupons"). Because a coupon's value cannot be touched, seen or realized on its own, as its value is connected to the tangible personal property to which it applies, it is intangible property for taxation purposes. *See DeGiorgis v. 3G's Contracting, Inc.*, 62 A.3d 1024, 1027 (Pa. Super. 2013) (citing *In re Macfarlane's Estate*, 459 A.2d 1289, 1291 (Pa. Super. 1983)) (explaining that intangible property "has no intrinsic or marketable value, but is merely the *representative or evidence of value*, such as certificates of stock, bonds, promissory notes, and franchises"). It is of no consequence as to whether the coupons used were

14

paper coupons or electronic coupons, as this distinction does not change the fact that the coupon is only representative of value. Accordingly, we cannot agree with Taxpayers that coupons are tangible personal property or that Section 201(g)(2) supports their assertion that they are entitled to a deduction in the purchase price pursuant to this rationale.

Although we conclude that Revenue's regulation is not in conflict with the Tax Code, we agree with Taxpayers that the Board erred in its application of the regulation. The regulation provides that a store or manufacturer's coupons "shall establish a new purchase price *if both the item and the coupon are described on the invoice or cash register tape*." 61 Pa. Code § 33.2(b)(2) (emphasis added). The Board stated that:

> When the receipt contains both taxable and nontaxable items it must be established *that the coupon relates to a taxable item* before a reduction can be made to the taxable purchase price thereby reducing the sales tax charged.
>
> Although BJ's maintains History Reports that are more descriptive than the receipts, the coupons are not adequately described on the receipts presented and there is *nothing to indicate to which item the coupon relates*. The description on the receipt is "SCANNED COUP." Consequently, the Board concludes that the acceptance of the coupon by BJ's does not establish a new purchase price, and therefore, sales tax is due on the price of the items purchased without coupon deduction.

Board Opinions at 4; Stip. Exs. N & O (emphasis added). The Board erred when it provided that to obtain a reduced purchase price, the regulation requires the receipt to specify to which taxable item it relates rather than simply requiring a description that allows one to discern that a taxable item was purchased and a coupon was

15

accepted that applied to a taxable item purchased. *Id.* There is no requirement within the regulation that the receipt indicate to precisely which taxable item the coupon relates. *See* 61 Pa. Code § 33.2(b)(2). With the requirements of the regulation in mind, we now examine the receipts of the four transactions.

Initially, we observe that on the printed receipts,[10] next to the items purchased and coupons, are the initials "T" and "N." These initials are not defined on the receipts but the Commonwealth asserts, and Taxpayers do not dispute, that the "T" refers to a taxable item while an "N" refers to a non-taxable item. Commonwealth's Brief at 23. Turning to Taxpayer Myers' three transactions, we begin with an examination of the August 22nd and 25th transactions that involved the purchase of one item.

In the August 22nd transaction, Taxpayer Myers purchased one item as provided on the relevant part of the receipt:

---

[10] Taxpayers assert that the Board erred by refusing to consider the purchase history reports. Taxpayers' Brief at 10-11. We disagree. The purchase history reports have no relevance to the resolution of this matter. The regulation requires the description of both the item and the coupon to appear on one of two types of records: an invoice or cash register tape (that is, the receipts). *See* 61 Pa. Code § 33.2(b). The regulation does not allow for consideration of other types of records created by vendors after the transaction ends, such as the purchase history reports, to ascertain the purchase price of an item.

```
7023012202  ' TIDY CAT 38#      13.49 T
570230149058   SCANNED COUP       3.00-T
    **** SUBTOTAL              10.49
PA STATE TAX  6%                0.81
    **** TOTAL                 11.30
************1942
AUTH 022718              0001

        MasterCard            11.30
        CHANGE                 0.00
TOTAL NUMBER OF ITEMS SOLD =    1
```

*See* Stip. Ex. C. As noted above, the receipt shows on the first line: "TIDY CAT 38#   13.49 T." On the second line, the receipt shows "SCANNED COUP   3.00-T." *Id.* The subtotal for the item was "10.49" followed by the imposition of sales tax in the amount of ".81" to reach a total of "11.30." *Id.*

In the August 25th transaction, Taxpayer Myers also purchased one item as provided on the relevant part of the receipt:

```
1780043119    ONE CAT 16#      21.99 T
517800202211   SCANNED COUP  ( 1.00-T
    **** SUBTOTAL              20.99
PA STATE TAX  6%                1.32
    **** TOTAL                 22.31
************1942
AUTH 025698

    . MasterCard             22.31
      CHANGE                  0.00
TOTAL NUMBER OF ITEMS SOLD =    1
```

Stip. Ex. D. Similarly, in the August 25th transaction, the receipt shows on the first line: "ONE CAT 16#    21.99 T." *Id.* On the second line, the receipt shows: "SCANNED COUP   1.00-T." *Id.* The subtotal for the item was listed at "20.99" followed by the imposition of sales tax in the amount of "1.32" to reach a total of "22.31." *Id.*   In both transactions, BJ's accepted as consideration the amount of the coupon along with a credit card payment to complete the transactions and the six percent sales tax was imposed on the original (or pre-coupon) purchase price of the item. Stip. Exs. C & D.

Applying the regulation here, the amounts representing the items and the scanned coupon were "separately stated" on the receipts. The second line "identified" that a coupon was scanned or accepted as part of the consideration and the receipt "described" the amount of the coupon, showed it was for a taxable item as it was marked with a "T" and showed how the amount reduced the total amount owed or purchase price owed to complete the sales transactions. *See* 61 Pa. Code § 33.2(b)(2) (noting that "coupons shall establish a new purchase price if both the item and the *coupon* are *described*") (emphasis added); *see* Stip. Exs. C & D (providing the subtotal owed for the August 22nd transaction was $10.49 for an item priced at $13.49 and the subtotal for the August 25th transaction was $20.99 for an item priced at $21.99). Though the Commonwealth argues that there is nothing on the receipt identifying the nature of the coupon (that is, whether it is a rebate or a store or manufacturer's coupon) to enable this Court to evaluate whether the acceptance thereof establishes a new purchase price, Commonwealth's Brief at 23, there is no requirement in the regulation that the "nature" of the scanned coupon be described by name or be directly related to or connected to a particular item purchased. When one taxable item is purchased and one coupon for a taxable item is scanned, there

18

can be no question that the coupon related to a taxable item purchased. The regulation simply requires that the "amounts" representing "both the item and the coupon" be "described on the invoice or cash register tape." *See* 61 Pa. Code § 33.2(b)(2). To require more asks this Court to add words to the regulation that are not present.

We now examine the remaining two transactions, the June 13th and June 25th transactions, which involved purchases of several items followed by several "SCANNED COUP" notations. Stip. Exs. A & B. The receipt produced by Taxpayer Myers for the June 13th transaction provided, in relevant part:



Stip. Ex. B. For Taxpayer Myers' June 13th transaction, the receipt shows six items purchased, each on a separate line, followed by five scanned coupons each listed on the next five lines that were presented, with other consideration, to complete the

19

transaction.  *Id.*  Of the six items purchased, all six had a "T" following the purchase price of the item as did the five coupons.  *Id.*  It is clear that all six items purchased on this cash register tape were taxable items.  It follows, then, that the five coupons, all marked with a "T," must have related to taxable items.  Accordingly, Taxpayer Myers is entitled to refund of the overpayment of tax represented by the amount of the coupons that should have been excluded from the original purchase price.

To the contrary, the June 25th[11] transaction receipt for Taxpayer Reihl's transaction provided, in relevant part:



Stip. Ex. A.  The June 25th receipt shows a total of six items purchased, each on a separate line with an amount for each item, and BJ's accepted four scanned coupons, each listed on the next four lines, presented to complete the transaction with other

---

[11] The receipt bears the date of June 26, 2012, but the parties stipulated to the transaction date of June 25, 2012.  Stip. ¶15 & Ex. A.

consideration. *Id.* Notably, of the six items purchased, only two items had a "T" following the purchase price, while the remaining four items had an "N" on the receipt following the purchase price. *Id.* In addition, the register tape only identifies "SCANNED COUP." *Id.* This identification is insufficient to determine whether the coupon was applicable to a taxable item and any discount represented by the coupon cannot be excluded from the purchase price in accordance with the regulation. Therefore, Taxpayer Reihl failed to establish an entitlement to a refund of an overpayment of tax.

Where there is only one item purchased and sales tax is imposed, it is obvious that the item purchased was a taxable item. Furthermore, when there is only one coupon applied prior to the consummation of the sale or during the sales transaction, where only one taxable item was purchased, like Taxpayer Myers' August 22nd and August 25th transactions, it is evident that the coupon applied to that single taxable item. When all items are described as taxable and all of the coupons relate to taxable items, as is the case with Taxpayer Myers' June 13th transaction, no further description is required. It is evident from the receipts that the coupons applied to taxable items and the description was adequate, which means that an overpayment of tax was paid when the coupon amount was not excluded from the original purchase price for calculation of sales tax owed. When all items are not identified as taxable and all coupons not identified as relating to a taxable item, the description is inadequate and the amount of the coupons cannot serve to reduce the purchase price as is the case with Taxpayer Reihl's June 25th transaction.

Here, the Board correctly stated that "[w]hen the receipt contains both taxable and nontaxable items it, must be established that the coupon relates to *a taxable item* before a reduction can be made to the taxable purchase price thereby

21

reducing the sales tax charged." Board Orders dated 3/30/16 p.4 (emphasis added). The Board correctly interprets the word "described" in the regulation to mean that there must be an indication that *a taxable item* was purchased and that the discount was for a taxable item or applicable to taxable items, so that the purchase price to which the tax is applied can be reduced by the amount of the coupon. However, we note that the Board did err in its application of the rule when it reasoned that "there is nothing to indicate *to which item* the coupon relates." *Id.* (emphasis added). The regulation does not require that the coupon relate to a particular taxable item; the regulation simply requires that "both the item and the coupon" be "described on the invoice or cash register tape." 61 Pa. Code § 33.2(b)(2). Reason dictates that the description need only be in a manner sufficient to show that the amounts reflected by the coupon apply to a taxable item to allow for the reduction from the taxable portion of the purchase price. To interpret otherwise would allow BJ's to collect tax from customers on amounts for which no tax was due.

Based on the foregoing, we reverse the Board's denial of Taxpayer Myers' request for refunds relating to the June 13th, August 22nd and August 25th transactions, as the receipts can be interpreted in no other manner than for the coupons to relate to the purchase of taxable items. Though the Board erred with respect to Taxpayer Myers' transactions, we affirm the denial of Taxpayer Reihl's request for a refund as to the June 25th transaction.

_____
CHRISTINE FIZZANO CANNON, Judge

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| John G. Myers, | : | |
|     Petitioner | : | |
| | : | |
|     v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | No. 274 F.R. 2016 |
|     Respondent | : | |
| | : | |
| | : | |
| Cecelia A. Reihl, | : | |
|     Petitioner | : | |
| | : | |
|     v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | No. 275 F.R. 2016 |
|     Respondent | : | |

# O R D E R

AND NOW, this 11th day of May, 2020, the order of the Board of Finance and Revenue (Board) dated March 30, 2016 denying John G. Myers' request for refunds is REVERSED. The order of the Board dated March 30, 2016 denying Cecelia A. Reihl's request for a refund is AFFIRMED. Unless exceptions are filed within 30 days pursuant to Pa.R.A.P. 1571(i), this order shall become final.

_____
CHRISTINE FIZZANO CANNON, Judge